*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0444p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

> *v.*

GILBERTO MARTINEZ (03-3833), JEREL HENDERSON (03-3835), KEVIN S. HARRIS (03-3879), BRIAN GARRETT (03-3917),

> *Defendants-Appellants.*

Nos. 03-3833/3835/3879/3917

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-00747—David A. Katz, District Judge.

Argued: September 15, 2005

Decided and Filed: November 17, 2005

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Spiros P. Cocoves, Toledo, Ohio, Bertrand R. Puligandla, Toledo, Ohio, Jonathan K. Stock, JONES DAY, Columbus, Ohio, John M. Nicholson, McNABB ASSOCIATES, Houston, Texas, for Appellants. William C. Brown, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Spiros P. Cocoves, Toledo, Ohio, Bertrand R. Puligandla, Toledo, Ohio, Jonathan K. Stock, Shawn J. Organ, JONES DAY, Columbus, Ohio, John M. Nicholson, Douglas C. McNabb, McNABB ASSOCIATES, Houston, Texas, for Appellants. William C. Brown, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

GUY, J., delivered the opinion of the court, in which BATCHELDER, J., joined. GILMAN, J. (pp. 21-22), delivered a separate concurring opinion.

1

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge.  Defendants Gilberto Martinez, Jerel Henderson, Kevin Harris, and Brian Garrett each appeal their conviction on a single count of conspiracy to distribute and to possess with intent to distribute cocaine, cocaine base, and marijuana.  21 U.S.C. §§ 846 and 841(a)(1).  All four defendants contend that admission of an anonymous letter as a coconspirator statement under Fed. R. Evid. 801(d)(2)(E) was improper and violated the Confrontation Clause.  Two defendants, Harris and Henderson, challenge the sufficiency of the evidence to support their convictions.  Other claims of trial error are raised by one or more of the defendants concerning evidence of prior convictions, the denial of a mistrial, testimony concerning two drug sales made within 1000 feet of a school, the instructions given to the jury, and inconsistencies between the indictment and the judgments.  In addition, Henderson asks this court to consider the claim that he received ineffective assistance of counsel at trial.  Finally, all four defendants raise multiple claims of error in sentencing; not least of which is to argue that resentencing is required under *United States v. Booker*, 125 S. Ct. 738 (2005).  After review of the record and the arguments presented on appeal, we AFFIRM the defendants' convictions but VACATE the sentences of all four defendants and REMAND for resentencing in accordance with this opinion.

**I.**

A lengthy investigation of drug trafficking activities in the Sandusky, Ohio, area by state and federal authorities led to an indictment of 14 individuals in July 2001, all of whom pleaded guilty.  A number of those defendants, including Daryl Castile, Ervin Turner, Shawn Gray, Bert Fenderson, and Thomas Hamilton, testified for the government at the trial in the present case.  Further investigation led to the indictment in this case charging ten additional defendants with the same drug conspiracy charged in the first case.

The second indictment alleged in a single count that from 1990 through May 1, 2002, Gilberto Martinez, Eddie B. Thomas, Alastair Hatter, Herbert Hatter, Kevin Harris, Demetrius Brown, Ernest Chaney, Brian Garrett, Jerel Henderson, and Deshay Jones knowingly conspired to distribute and possess with intent to distribute cocaine, cocaine base, and marijuana.  It was further alleged that the purpose and object of the conspiracy was to distribute over 250 kilograms of cocaine, over 10 kilograms of cocaine base, and over 1000 pounds of marijuana in Sandusky and Fremont, Ohio.  Multiple overt acts, mostly drug transactions, were alleged to have been taken in furtherance of the conspiracy.

Four of the defendants entered guilty pleas and testified for the government at trial; they were Eddie Thomas, Deshay Jones, Al Hatter, and Herb Hatter.  The remaining six were tried jointly and, after several weeks of testimony, the jury acquitted Chaney and failed to reach a verdict as to Brown.[1]  The last four defendants, Martinez, Henderson, Harris, and Garrett, were each convicted on the conspiracy count.  The jury returned special verdicts finding them each responsible for the following drug quantities:  (1) Martinez, five or more kilograms of cocaine, and 100 kilograms but less than 1000 kilograms of marijuana; (2) Garrett, five or more kilograms of cocaine, and 50 grams or more of cocaine base; (3) Harris, 500 grams but less than five kilograms of cocaine, and five grams but less than 50 grams of cocaine base; and (4) Henderson, less than 500 grams of cocaine, five grams but less than 50 grams of cocaine base, and 50 kilograms but less than 100 kilograms of

———————————

[1]Brown subsequently entered a guilty plea.

marijuana.  The jury also found Garrett had made two drug sales from a residence located within 1000 feet of a school.

The defendants were sentenced to the following terms of imprisonment:  Martinez, 292 months; Harris, 130 months; Garrett, 349 months; and Henderson, 360 months.  In calculating the guideline ranges, the district court found the defendants were responsible for higher quantities of drugs than were found by the jury and increased their base offense levels accordingly.  Collectively, defendants challenge sentencing enhancements based on drug quantity (USSG § 2D1.1), role in the offense (USSG § 3B1.1), being a career offender (USSG § 4B1.1), and the distribution of drugs within 1000 feet of a school (USSG § 2D1.2).[2]  Defendants raise other sentencing errors in addition to arguing that resentencing is required under *Booker*.  These consolidated appeals followed.

## II.

### A.      Anonymous Letter

We begin first with the anonymous letter because all four of the defendants argue that its admission requires reversal.[3]  The letter was found in one of the coordinated searches conducted on May 8, 2002, one week after the indictment was returned in this case.  The letter, Exhibit 58, was found in the apartment of Garrett's girlfriend, Brenda Stachki.  The apartment was frequented by Garrett, who kept clothes and other belongings there.  The letter was handwritten, unaddressed, unsigned, and undated.  The letter mentions "papers" that were previously sent, which appears to refer to documents that had been disclosed to defense counsel in the first case.  Those documents, which were found in a car used by Garrett, in an apartment used by Chaney, and in Brown's bedroom, included a witness list, photographs of cooperating individuals and confidential informants, and reports of interviews with cooperating witnesses.  None of the defendants argue that it was error to admit these documents, but all of them claim it was error to have admitted the anonymous letter.

Defense counsel objected, and the district court deferred ruling until defense counsel had an opportunity to review and address what the district court referred to as "a very significant piece of evidence."  Arguments were heard and the matter was taken under advisement.  Ultimately, the district court concluded that the letter was admissible under Fed. R. Evid. 801(d)(2)(E) and that its admission would therefore not violate the Confrontation Clause.  Because the district court inferred from the context and content of the letter that it was written by a coconspirator in the course and furtherance of the conspiracy, we quote the letter in full:

> Well, I was hoping y'all niggas would've wised up, and thought about the reason why those papers were sent to y'all. It wasn't for our health.  Y'all let them niggas walk around like they didn't do shit. Y'all out there with them. If we locked up, who's next on the list to be told on? Right!  So take heed, cause you know Tommy used you as a[] scapegoat, Kenny used Mike.  It don't take much to get these people going.  Bert and Kyle started this shit, but it ain't finished.  Not all of them paperworks was correct, but the ones you got were.  The nigga Chat[man], supposedly put venom on y'all to.  He still down here.  Tell Ace hoe ass to quit running off at his mouth, cause his gay ass brother got a 2 ½ hour video tape, talking

---

[2]The government also provided timely notice pursuant to 21 U.S.C. § 851(a) of the intention to seek enhancements to the defendants' sentences based on their prior drug convictions.

[3]Garrett and Harris, joined by Martinez, challenge the admissibility under Fed. R. Evid. 801(d)(2)(E) and argue that its admission violates the Confrontation Clause.  Henderson and Harris argue additionally that the district court erred by failing to make adequate findings under Rule 801(d)(2)(E).

about how E.B. [Thomas] put y'all on, over on Adams, Meigs, Jefferson, and Perry [streets]. And he mentioned his on brother Ace [Matt Johnson]. So quit taking up for his hoe ass. They supposedly got Othel Loofties, Willie Philon, Kevin Duvall, Ladale Kidd, Erv Turner, Eric Reed (Detroit-Boy), Darnell Kirkwood, Tommy Hamilton, Lemon Jones, Mike Johnson, Lil Mike Kincaide, Fred Lanier, and Tony Cook all in Milan, separated from us, so they can get interviewed, they call it debriefing. Telling everything they know about drug activity in the city. This will be it. This pretty much let's you know that they trying to clean up them streets. Right now they handing out 10 pieces and up, if your not willing to lie on somebody else. Be cautious of your surroundings, and start cutting your so-called boys or niggas lose. 9 out of 10 will be on the enemy side when it's over. Don't wait til the last minute, like we did. Get prepared.

Based on his knowledge of the investigation, Officer Dana Newell identified the individuals referenced by their first names or by their "street names." He explained that the letter named many individuals who had been charged in the first case, whose interviews were disclosed to defense counsel in the first case, and who ultimately testified for the government in this case—including Bert Fenderson (a/k/a Wilbert Farris), Thomas Hamilton, Willie Philon, Ladale Kidd, Erv Turner, Eric Reed, Darnell Kirkwood, and Michael Kincaide. The letter also warned that information had been provided about Thomas, who pleaded guilty in this case and testified for the government at trial. With this factual background, we turn to the various issues raised by its admission.

### 1.     Truth of Matter Asserted

The government argues for the first time on appeal that the letter was not hearsay because it was not "offered for the truth of the matter asserted." FED. R. EVID. 801(c). Likening the letter to an anonymous drug ledger not offered for the truth of the entries made in it, the government argues that it was offered simply for the fact that it was found in a place frequented by Garrett. *United States v. Wilson*, 532 F.2d 641, 646 (8th Cir. 1976). However, the government made no attempt to limit its use to a nonhearsay purpose. *United States v. Mahar*, 801 F.2d 1477, 1492 (6th Cir. 1986). Moreover, the government's arguments at trial and on appeal reveal that the letter was offered as circumstantial evidence of the existence of the alleged conspiracy. Since it was offered for the truth of the matter asserted inferentially, it is hearsay absent an exception. *Lyle v. Koehler*, 720 F.2d 426, 432-33 (6th Cir. 1983) (truth of matter asserted inferentially).

### 2.     Coconspirator Exception

A statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). The government bears the burden of showing by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the statement was made in the course and furtherance of the conspiracy. *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994); *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992) (en banc). The statements themselves may be considered in determining admissibility under Rule 801(d)(2)(E). *Clark*, 18 F.3d at 1341. These findings, often called *Enright* findings, must be made by the district court. *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978).

Without contesting the district court's finding that a conspiracy existed, one or more of the defendants argue that the government failed to establish either (1) that the anonymous declarant was a member of the conspiracy, or (2) that the statements were made in the course and furtherance of the conspiracy. Whether the government met this burden is a preliminary question of fact that is reviewed for clear error, while the ultimate decision to admit the letter under Rule 801(d)(2)(E) is reviewed for abuse of discretion. *United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002); *United*

*States v. Smith*, 320 F.3d 647, 654 (6th Cir. 2003). "'A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.'" *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (citation omitted).

### a.     Anonymous Declarant as Member of Conspiracy

An anonymous statement may be admissible under Rule 801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the evidence that there was a conspiracy involving the author and the defendant, and the statement was made in the course and furtherance of the conspiracy. *United States v. Breitkreutz*, 977 F.2d 214, 219 (6th Cir. 1992). "What is essential is that the government show that the unknown declarant was more likely than not a conspirator." *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985).

The letter was found in a place connected to one of the conspirators and purports to be from someone knowledgeable about and involved in the conspiracy writing to warn associates regarding the course of the government's investigation into the conspiracy. It mentions "papers" sent to "y'all" that seems to refer to the investigative documents disclosed to defense counsel in the first case and found in searches of places connected to several of the defendants in the second case. The letter also warned that certain individuals were cooperating with the government, many of whom admitted their participation in the conspiracy and testified against the defendants at trial. In closing, the letter advised caution, and warned that the recipients should "cut off" their associates and not "wait til the last minute, like we did." The district court did not clearly err in finding that the government met its burden to show that the letter, although unsigned, was more likely than not written by a member of the alleged conspiracy. *Accord United States v. Quinones-Cedeno*, 51 Fed. Appx. 558, 568 (6th Cir. 2002) (unpublished decision) (concluding that circumstantial evidence supported finding that anonymous warning letter was written by a coconspirator).

### b.     In the Course and Furtherance

Having found that the anonymous declarant was a member of the conspiracy, we must determine whether the statements were made in the course and furtherance of the conspiracy. Defendants argue that the statements were not made "in the course" of the conspiracy because the letter was found in Garrett's girlfriend's apartment on May 8—one week after the indictment was returned and one day after Garrett's arrest on May 7. There are two flaws in this argument. First, the relevant inquiry is not when the letter was discovered, but when the statements were made. Second, "the scope of the conspiracy itself, as alleged in the indictment, does not necessarily limit the application of the co-conspirator exception." *United States v. Pope*, 574 F.2d 320, 328 (6th Cir. 1978).[4] The letter need not have been written before the date of the indictment as long as it was written before the conspiracy expired. *United States v. Lyon*, 959 F.2d 701, 705 (8th Cir. 1992). Although defendants emphasize that Garrett was arrested the day before the letter was found, it is reasonable to conclude from the contents of the letter that it was written in the Milan Federal Correctional Facility more than one day before it was found.

"A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." *United States v. Carter*, 14 F.3d 1150, 1155 (6th Cir. 1994). This requirement is satisfied when the statements are made to apprise a coconspirator of the progress of the conspiracy, to induce his continued participation, or to allay his fears. *United States v. Rios*, 842 F.2d 868, 874 (6th Cir. 1988). Statements that prompt a coconspirator to act in a matter that facilitates the carrying out of the conspiracy, or that serve as

---

[4]In fact, coconspirator statements may be admissible under Rule 801(d)(2)(E) even when no conspiracy has been charged. *United States v. Blankenship*, 954 F.2d 1224, 1231 (6th Cir. 1992).

a necessary part of the conspiracy by concealing or impeding the investigation, are also made in furtherance of the conspiracy. *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997); *United States v. Blakely*, 960 F.2d 996, 998 (6th Cir. 1992). On the other hand, statements regarding concealment that are made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy. *Krulewitch v. United States*, 336 U.S. 440 (1949) (holding that agreement to conceal a completed crime does not extend the life of the conspiracy); *United States v. Howard*, 770 F.2d 57, 60 (6th Cir. 1985). Defendants do not attempt to show that the conspiracy ended before the letter was written.

At least one defendant argues, however, that because the author was incarcerated when the letter was written, he was no longer active in the conspiracy and therefore the statements could not have been made in furtherance of the conspiracy. A coconspirator's participation in a conspiracy ordinarily ends with his arrest for his role in the offense. *United States v. Arce*, 997 F.2d 1123, 1128-29 (5th Cir. 1993); *United States v. Ellis*, No. 92-2188, 1994 WL 64844, **2 (6th Cir. Mar. 1, 1994) (unpublished decision). That is not necessarily true, however, because an arrested coconspirator does not always terminate his involvement in an ongoing conspiracy. *United States v. Howard*, 115 F.3d 1151,1156-57 (4th Cir. 1997); *Ellis*, at **2.

In this case, it is apparent from the content of the letter that it was written with the intent to promote the objectives of the conspiracy by providing information relating to the government's ongoing investigation, warning that some of its members could no longer be trusted, and advising caution in future dealings. *Accord Quinones-Cedeno*, 51 Fed. Appx. at 568 (warning letter). We also find, despite defendants' claims to the contrary, that the statements in the letter did not represent "idle chatter" or mere narrative statements about past events that would not have been in furtherance of the conspiracy. *Compare United States v. Darwich*, 337 F.3d 645, 657-58 (6th Cir. 2003) (finding statements made in passing about how much marijuana had been bagged was casual conversation about past events); *United States v. Maliszewski*, 161 F.3d 992, 1009 (6th Cir. 1998) (finding conversation between husband and wife related to individual objectives or was merely idle chatter). Accordingly, we find no clear error in the district court's implicit finding that the statements were made in the course and furtherance of the conspiracy.

### c.     Adequacy of Findings

Henderson and Harris seek remand for the district court to fully articulate its findings on the admissibility of the letter under Rule 801(d)(2)(E). The district court referred to its earlier finding that the conspiracy existed, gave its reasons for finding that the author was a member of the conspiracy, and overruled the defendants' objections, albeit without specifically addressing the remaining requirements separately. This court has remanded when the district court fails to make any findings at all, *United States v. Castro*, 908 F.2d 85, 91 (6th Cir. 1990), and has cautioned "that a mere conclusory statement will not always suffice," *United States v. Curro*, 847 F.2d 325, 329 (6th Cir. 1988). Despite this court's stated preference for specific *Enright* findings, even conclusory findings have been upheld when the court could conclude with confidence that the government had met its burden. *United States v. Moss*, 9 F.3d 543, 549 (6th Cir. 1993).

First, Harris mistakenly argues that the district court failed to find that the declarant was a member of the conspiracy. Second, although Harris and Henderson complain that there was no express finding that the statements were made in furtherance of the conspiracy, we are satisfied for the reasons discussed in the preceding section that the government met its burden of making this showing. Finally, while Henderson is correct that the district court did not explicitly find that the government had shown that he was a member of the conspiracy, that showing need only be made by a preponderance of the evidence and our review of the sufficiency of the evidence below satisfies us that the government met this burden. The district court's findings were not akin to the nonexistent or completely conclusory rulings made in the cases cited by defendants. *See Kone*, 307

F.3d at 440-41; *United States v. Dakota*, 197 F.3d 821, 827 (6th Cir. 1999); *United States v. Mahar*, 801 F.2d 1477, 1494-95 (6th Cir. 1986). While not as specific as we might prefer, the findings were comparable to those we found to be adequate in *Maliszewski. See* 161 F.3d at 1007.

### 3.       Confrontation Clause

In *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), the Supreme Court held that an out-of-court statement offered for the truth of the matter asserted satisfied the Confrontation Clause if there were adequate indicia of reliability because the statement either fell within a "firmly rooted hearsay exception," or otherwise bore "particularized guarantees of trustworthiness." According to the Supreme Court, the federal coconspirator exception is one such "firmly rooted hearsay exception." *Bourjaily v. United States*, 483 U.S. 171, 182-84 (1987). Consistent with *Roberts* and *Bourjaily*, the district court overruled the defendants' Confrontation Clause objection because it had found the letter was admissible under Rule 801(d)(2)(E). The question presented is whether reversal is required by the subsequent Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004). We conclude that it is not.

*Crawford* introduced a fundamental change distinguishing between testimonial and nontestimonial statements for purposes of the Confrontation Clause. As we explained in *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004), the ultimate holding in *Crawford* was that "testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." This abrogated *Roberts* with respect to such testimonial statements, but stopped short of overruling prior Confrontation Clause jurisprudence. *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005); *United States v. Pugh*, 405 F.3d 390, 398 (6th Cir. 2005); *see also United States v. Franklin*, 415 F.3d 537 (6th Cir. 2005). Under *Crawford*, admission of the letter in this case would violate the Confrontation Clause if the statements were "testimonial" in nature.

Declining to "spell out a comprehensive definition of 'testimonial'" in *Crawford*, the Court stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. Yet, tellingly, the Court noted that the hearsay exception for statements in furtherance of a conspiracy covers statements that "by their nature were not testimonial." *Id.* at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial–for example, business records or statements in furtherance of a conspiracy.") The Court also cited *Bourjaily* as an example of a case consistent with the principles on which its decision rested. *Id.* at 58.

After examining the reasoning in *Crawford* and two competing definitions of the term "testimonial," this court favored the formulation proposed by Professor Friedman and held that:

> The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*Cromer*, 389 F.3d at 675. We agree that a reasonable person in the position of a coconspirator making a statement in the course and furtherance of a conspiracy would not anticipate his statements being used against the accused in investigating and prosecuting the crime. In fact, one of the five "rules of thumb" proposed by Friedman in applying this standard is that: "A statement made by one participant in a criminal enterprise to another, intended to further the enterprise, is not testimonial." *Id.* at 673 (internal quotation marks and citation omitted). Other circuits that have addressed the impact of *Crawford* on the admission of statements that meet the requirements of Rule 801(d)(2)(E)

have uniformly held that the statements are not testimonial in nature. *See*, *e.g.*, *United States v. Hendricks*, 395 F.3d 173, 183-84 (3d Cir. 2005); *United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004), *cert. denied*, 124 S. Ct. 2962 (2005); *United States v. Robinson*, 367 F.3d 278, 292 n.20 (5th Cir.), *cert. denied*, 125 S. Ct. 623 (2004).

Harris argues that because the author is unknown it is possible that the letter was "penned and planted" such that the statements would "reasonably [be expected] to be used prosecutorially." *Crawford*, 541 U.S. at 51. This assertion is pure speculation, made without any factual basis to support it. As we have already found, the district court did not clearly err in finding by a preponderance of the evidence that the letter was written by a conconspirator in the course and furtherance of the conspiracy. We find that the admission of the letter in this case did not violate the Sixth Amendment right to confrontation.[5]

### 4.     Limiting Instruction

When the district court overruled the defendants' objections to the admission of the letter, counsel for Harris asked for a limiting instruction to advise the jury that it pertained only to Garrett. The district court deferred making a ruling until the letter was offered, but Harris did not renew the request at that time. Assuming this issue was preserved, there was no error. Because the statements in the letter were properly admitted under Rule 801(d)(2)(E), they were not hearsay. As a result, the statements were competent evidence for all purposes and could be used to determine the defendant's guilt or innocence on the charge of conspiracy. *Bourjaily*, 483 U.S. at 183-84. Consequently, no limiting instruction was required and the failure to give one was not erroneous. *Accord United States v. Goshen*, No. 91-3905, 1993 WL 503728, at **5 (6th Cir. Dec. 8, 1993) (unpublished decision).

### B.     Sufficiency of the Evidence

Only Harris and Henderson challenge the sufficiency of the evidence. The relevant question on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In making this determination, however, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury. *United States v. Hillard*, 11 F.3d 618, 620 (6th Cir. 1993).

In order to sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841(a)(1); (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Welch*, 97 F.3d 142, 148-49 (6th Cir. 1996). "[P]roof of a formal agreement is not necessary; 'a tacit or material understanding among the parties' will suffice." *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990)). The existence of a conspiracy "'may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'" *Id*. at 971 (citation omitted). Once a conspiracy is shown beyond a reasonable doubt however, a defendant's connection to the conspiracy "need only

---

[5]In discussing harmless error, defendants emphasize the district court's statement that the letter was "a very significant piece of evidence." It should be noted that this comment was made in deciding that defendants should be afforded an opportunity to examine the letter and prepare to argue against its admission. While the letter was relevant circumstantial evidence tending to show the existence of the alleged conspiracy, it was hardly the only or even the strongest evidence of conspiracy in light of the testimony from numerous cooperating witnesses. The letter did not mention these defendants by name, nor were any of the "papers" found in places linked to Martinez, Harris, or Henderson. Although the government emphasized that the papers were found in places linked to Garrett, Chaney, and Brown, the jury acquitted Chaney and failed to reach a verdict as to Brown.

be slight." *Id*. Moreover, a defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence. *United States v. Salgado*, 250 F.3d 438, 447 (6th Cir. 2001).

Review of the record reflects ample evidence from which the jury could infer that there was a chain-type conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and marijuana in the Sandusky area. Although the evidence consisted primarily of plea-based testimony from coconspirators, there was also testimony from law enforcement officers concerning a number of monitored transactions and other evidence obtained in the investigation. Before turning to the specific claims of error, we broadly outline some of the evidence as it relates to the defendants who have appealed.

Martinez, who is from Texas, supplied large quantities of marijuana and cocaine to dealers in Sandusky. There was specific testimony that between 1993 and 1996, Martinez fronted Herb Hatter 50 pounds of marijuana twice and 5 kilograms of cocaine once. During 2000 and 2001, Martinez arranged for about $50,000 worth of cocaine and marijuana to be transported to Castile about twice per month, some of which Castile shared with Jones. Jones testified that each shipment involved between 3 and 7 kilograms of cocaine and 50 to 70 pounds of marijuana. In December 2001, after Castile's arrest, Martinez was stopped while driving with Jones in a truck in which several kilograms of cocaine and $9,490 in cash had been concealed.

In the mid-1990s, Eddie Thomas, a codefendant in this case, supplied cocaine to dealers in the Sandusky area, including Castile, Turner, Fenderson, Harris, Garrett, and Gray. Some of those arrangements are pertinent to these appeals. Castile testified that he bought 4 1/2 ounces of cocaine per week from Thomas for about three years. Castile, in turn, supplied 4 1/2 ounces directly to Harris (once in 1995 and four times in 1997), and 1/2 kilogram to Willie Philon (four or five times). Castile found another supplier from California from whom he bought 5 kilograms of cocaine twice per month from 1996 to 1998. Castile stopped dealing when that supplier was arrested in 1998, but resumed his activities when Jones introduced him to Martinez in 2000.

Thomas supplied Garrett with 1 kilogram of cocaine per week for eight to ten weeks in 1990 and 1991, until Garrett went around him and bought directly from his supplier. Then, for several years in the mid-1990s, Garrett and Gray purchased 1 kilogram of cocaine per week from Thomas (or sometimes from Terrence Chatman). Occasionally, Garrett and Gray "pooled" their money with other dealers, including Michael Young and Mike Johnson, to buy a second kilogram of cocaine from Thomas. Thomas Hamilton testified that he drove with Garrett a few times to buy cocaine from Thomas. In three controlled buys, one each in January, April, and June 1996, Garrett sold cocaine base to a confidential informant. Those sales, which resulted in state convictions, were charged as overt acts in furtherance of the conspiracy. In 1999, Garrett and Young together bought 1/2 kilogram of cocaine from Philon.

Erv Turner, a defendant in the first case, testified that he got started buying cocaine from Henderson in 1990, and bought 1/16 or 1/8 ounce of cocaine from Henderson every three weeks. In the early 1990s, Henderson also sold or fronted similar quantities of cocaine to Thomas Hamilton between three and six times. Hamilton testified that he considered Henderson to be a secondary source for cocaine. One time, Henderson and two others went to Thomas to buy 1/2 kilogram of cocaine. Thomas called someone in Sandusky to check them out. They paid for only 9 ounces before a dispute arose over the quality, and Henderson's associates started shooting. Thomas grabbed all but 2 ounces of the cocaine and got away.

Henderson was involved in several drug transactions with Herb Hatter and Al Hatter in the early 1990s. Henderson and Herb Hatter exchanged a total of between 2 and 6 ounces of cocaine in a half dozen transactions. Al Hatter bought 50 pounds of marijuana from Henderson, rode with

Henderson to pick up 100 pounds of marijuana, and saw him with about 300 pounds of marijuana. Al Hatter also made purchases from Martinez and Garrett, while Herb Hatter made purchases from Martinez and Thomas. Darnell Kirkwood, a defendant in another case, testified that he saw Henderson sell cocaine base to others, went with Henderson to buy 4-ounce quantities of cocaine from someone in Detroit, and saw Henderson with about $200 worth of cocaine base on four or five occasions.

In 1993, Harris introduced Thomas to Erv Turner. Thomas sold Turner 1/8 kilogram of cocaine about once a month for several years. Turner testified that Harris would sometimes go with him and would buy similar quantities of cocaine from Thomas. Over a full year during 1998 and 1999, Harris bought between 9 and 18 ounces of cocaine per month from Philon (who testified he was buying cocaine through Jones).

Turner had stopped dealing drugs for several years, but returned to it from early 1999 until his arrest in August 1999. In that period of time, Turner bought a total of 10 ounces of cocaine from Henderson in five or six transactions and a similar quantity of cocaine from Harris in about four transactions. Harris also arranged at one point for Turner to buy cocaine directly from Philon. That summer, during June, July, and August 1999, Turner made six controlled buys to a confidential informant and testified that each time the cocaine had been obtained either from Harris or Henderson.

### 1.    Harris

Harris does not deny that there was a conspiracy or that he bought and sold drugs, but argues that the evidence showed at most that he was involved in a series of independent arms-length drug transactions amounting to no more than a mere buyer-seller relationship. Comparing this case to *United States v. Thomas*, 150 F.3d 743 (7th Cir. 1998), Harris maintains that the evidence was insufficient to establish his connection to the conspiracy. His reliance on *Thomas* is misplaced because there the court found plain error in the refusal to give a mere buyer-seller instruction in the face of evidence that the defendant had specialized in selling drugs on a spot-market basis. In this case, the jury was specifically instructed that evidence of a mere buyer-seller relationship would not be enough to establish a conspiracy.[6]

Next, Harris points to evidence that three of the testifying coconspirators had only one or two drug transactions with him.[7] It was not necessary to prove that Harris had ongoing dealings with all of the conspirators. In a drug distribution "chain" conspiracy, it is enough to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy. *Maliszewski*, 161 F.3d at 1014; *United States v. Odom*, 13 F.3d 949, 959 (6th Cir. 1994). As outlined above, there was evidence that Harris bought directly from Castile a handful of times, provided the introduction between Thomas and Turner that lead to the regular purchase of 1/8 kilogram quantities of cocaine, and had traveled with Turner to buy similar quantities of cocaine from Thomas. There was also evidence that Harris bought 9- and 18-ounce quantities of cocaine

---

[6]The jury was instructed that the "mere purchase or sale of drugs does not in itself establish a conspiracy to distribute"; that "the government must further demonstrate the other elements of conspiracy, including an agreement"; and that "evidence of a mere buyer/seller relationship alone does not support a conspiracy conviction, but you may consider other evidence concerning the relationship between the parties to determine the defendant's knowledge and participation in the conspiracy alleged."

[7]Specifically, Michael Kincaide indirectly sold cocaine to Harris twice; Thomas Hamilton sold one ounce of cocaine each to Harris and Gray once; and Damon Rice once obtained an ounce each of cocaine and cocaine base from Harris.

from Philon for a full year in 1998 and 1999. Harris, in turn, sold a total of about 10 ounces of cocaine to Turner in several transactions during the summer of 1999, some of which were then sold to a confidential informant. The fact that Philon said he did not know or care to know to whom Harris sold the cocaine did not preclude the jury from finding that they both knew they were participating in a joint venture.

"[E]vidence of repeat purchases provides evidence of more than a mere buyer-seller relationship," and the quantity of drugs may also support an inference of conspiracy. *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). We have no difficulty concluding that there was evidence from which a reasonable juror could find that a chain conspiracy existed and that Harris knowingly and intentionally joined in it. *Welch*, 97 F.3d at 149 (finding multiple purchases of significant quantities of drugs belied claim that defendant was a "mere buyer").

### 2. Henderson

Also contesting the sufficiency of the evidence to show that he knowingly joined the conspiracy, Henderson argues that no witnesses testified either that he was involved in the formation of the conspiracy, or that he was expressly told about the conspiracy. While this is true, it is immaterial because the government need not prove an explicit agreement to establish either the existence of the conspiracy, or that the defendant agreed to participate in what he knew to be a joint venture. It is also immaterial that Henderson did not play a central role in the conspiracy. It is not necessary that the defendant "be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991).

Henderson's knowledge and participation may be inferred from his dealings with several members of the conspiracy.[8] Henderson repeatedly supplied Turner with cocaine every three weeks for several years in the early 1990s, and another five or six times in 1999. There was also evidence that some cocaine Turner obtained from Henderson was sold to a confidential informant. Hamilton considered Henderson to be a secondary source and bought from him between three and six times, and Herb Hatter was also involved in a half dozen cocaine transactions with Henderson. On appeal, Henderson argues that the evidence was inconsistent with the alleged purpose and object of the conspiracy; namely, that Herb Hatter (and a number of others) had supplied drugs *to* Henderson (and a number of others). The sufficiency of the evidence is not undermined by the evidence that Henderson both bought and sold drugs to other members of the conspiracy. Herb Hatter admitted to being a member of the conspiracy and testified that his dealings with Henderson were part of the "drug business."

Additionally, there was evidence that Henderson sold large quantities of marijuana to members of the conspiracy on two occasions. Philon used Jones as a "go-between" to purchase 10 pounds of marijuana from Henderson, and Al Hatter purchased 50 pounds of marijuana from Henderson. Henderson points out that Hatter had other suppliers, including Martinez, and testified that he competed with Henderson for the same purchasers of marijuana. The fact that they sold to some of the same customers in the conspiracy's distribution chain is circumstantial evidence that Henderson was party to the general conspiratorial agreement.

Knowledge and participation can be inferred from the defendant's conduct, but mere association with members of the conspiracy is not enough to support such an inference. *Pearce*, 912

---

[8]Henderson points to the absence of evidence that he participated in transactions with anyone charged with him in the second indictment, but concedes that not all members of a conspiracy must be charged together. Here, a single conspiracy was charged in two indictments and several cooperating coconspirators from the first case testified against him at trial.

F.2d at 162. Relying on *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999), Henderson argues that his conviction rested on nothing more than the fact that he and many of the alleged coconspirators grew up together and sold drugs at the same time and in the same part of town. This case is not analogous to *Gibbs*.

The conspiracy convictions of two of the defendants in *Gibbs* were reversed because the evidence was insufficient to establish that they had joined in it. This court cautioned that the defendants' participation could not be inferred merely from the fact that they were drug dealers, knew each other from the neighborhood, and belonged to the same neighborhood organization called Short North Posse (SNP). The crux of the case, however, was the nature of the alleged conspiracy. Specifically, the government charged a loose group of drug dealers with conspiring to control distribution by excluding non-local drug dealers. While there was evidence that the defendants were dealing drugs, there was no evidence of an agreement to exclude others from dealing in the area.

In contrast, Henderson's connection to the conspiracy, a general conspiracy to distribute and possess with intent to distribute drugs, can be inferred from evidence that he was involved in repeat drug transactions with members of the conspiracy. *Accord United States v. Quinones-Cedeno*, 51 Fed. Appx. 558, 564 (6th Cir. 2002) (unpublished decision) (distinguishing *Gibbs* from a typical drug distribution conspiracy). We find that the evidence, taken in the light most favorable to the government, was sufficient to lead a rational trier of fact to find beyond a reasonable doubt that Henderson knowingly and intentionally joined in the alleged conspiracy.

## C.    Other Trial Errors

Garrett, Harris, and Henderson raise several claims of trial error.

### 1.    Garrett

Garrett contends that reversal is required because the district court permitted the government to elicit, over objection, improper "other acts" evidence. Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may not be admitted to prove the character of a person in order to show that he acted in conformity with it, but it may be admissible for other proper purposes under Rule 404(b) (such as motive, intent, knowledge, or absence of mistake). This court has identified a three-step inquiry to evaluate the admissibility of "other acts" evidence under Rule 404(b). *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996); *see also United States v. Mack*, 258 F.3d 548, 553-55 (6th Cir. 2001).

We have also recognized that "background" or "res gestae" evidence does not implicate Rule 404(b). *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Proper background evidence has a causal, temporal or spatial connection with the charged offense," and includes evidence that is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* We review the district court's evidentiary ruling for abuse of discretion. *Mack*, 258 F.3d at 553.

Steven Garrett, testifying as a defense witness, related that his brother, Brian Garrett, had come to live with him in Virginia after being hurt in a car accident. Steven testified that the defendant lived with him between 1988 and 1990, had a job, and made only a few trips to Sandusky during that time. Defendant moved back to Sandusky in October 1990, when Steven, who was in the military, got orders to go abroad. Steven returned to Sandusky in August 1997, and testified that his brother was not there and was gone for about a year. The government was concerned that the testimony about defendant's absence from Sandusky could leave the impression that he may have been away for innocent reasons, when in fact he was serving a one-year sentence on state drug

charges. As a result, the prosecutor asked Steven where his brother had been during the year he was away.

Defense counsel objected, and the prosecutor argued that the defendant had "opened the door" by implying that he was away for innocent reasons. The district court agreed with the prosecutor that the testimony left room for defendant to argue that defendant was not even in Sandusky during this period. On further questioning, Steven Garrett related that his brother had been in jail for a year after pleading guilty, but denied knowing that the convictions were for three counts of aggravated drug trafficking and one of receiving stolen property.

On appeal, defendant concedes that he pleaded guilty to three felony drug trafficking counts and was incarcerated from July 1997 until June 1998. There is also no dispute that those convictions arose from the three crack sales to a confidential informant, on January 30, April 9, and June 4, 1996, which were charged as overt acts in furtherance of the conspiracy and about which the government had presented direct evidence without objection in its case-in-chief. There can be no doubt that evidence of those sales was not "other acts" evidence because it was inextricably intertwined with the charged offense. *See Hardy*, 228 F.3d at 748-49; *see also United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Defendant does not argue to the contrary.

Garrett argues that Rule 404(b) governs the admission of "other acts" evidence even if offered for a non-enumerated purpose such as rebuttal. *United States v. Dunn*, 805 F.2d 1275, 1280 (6th Cir. 1986). However, evidence does not become "other acts" evidence because it was offered to refute an implication that Garrett was away from Sandusky for innocent reasons. Thus, it was not necessary for the district court to have engaged in the Rule 404(b) analysis.

Finally, Garrett argues that the evidence was not relevant and that it was unfairly prejudicial to have disclosed the nature of the convictions. It was not an abuse of discretion to find that the testimony left room for defense counsel to suggest in closing that Garrett's absence was inconsistent with guilt. Nor is this case like *United States v. Cook*, 538 F.2d 1000, 1005 (3d Cir. 1976), in which the court found that it was unfairly prejudicial to have disclosed that the defendant's prior conviction was for sodomy. The conviction was offered to establish that the defendant, who was charged with bank robbery, had a prior felony conviction in order to refute any claim that he could have been lawfully in possession of a firearm on the day of the offense.[9]

## 2.   Harris

Harris appeals from the denial of his motion for a mistrial, brought after a government witness testified that he had been arrested several times. In the government's examination of Curt Muehling, commander of the county's drug task force, the following exchange occurred:

Q:      Do you know Kevin Harris?

A:      Yes, I do.

Q:      Did Mr. Harris come to your attention *during the course of this investigation?*

A:      Yes, he had. We had investigated Mr. Harris for drug dealings in the past.

---

[9] Even if we were to find it was error to permit evidence of Garrett's prior convictions, that error would be harmless. The convictions arose during the conspiracy and there was overwhelming evidence that Garrett was involved in buying and selling drugs, including the specific testimony concerning the drug sales that resulted in the convictions in question.

MR. THEBES [COUNSEL FOR HARRIS]:  Objection, judge.

THE COURT:  Overruled.

A:    He had been arrested several times before.

MR. THEBES:  Objection.

Q:    Are these arrests pertaining to the narcotics investigation that you were doing in Erie County?

A:    Not at the time, no.

Q:    Later on did you have contact with Mr. Harris?

THE COURT:  With respect to the objection made regarding any arrest not connected with drug trafficking, you are to disregard the previous answer.  It will be stricken from the record.

MR. THEBES:  Thank you, Judge.

Q:    With respect to drug trafficking, did you have contact with Mr. Harris?

A:    Yes.

(Emphasis added.)  At the next break, Harris's attorney made a motion for mistrial "[b]ased on the non-responsive answer from Commander Muehling to the government concerning Mr. Harris's prior arrests."  The motion was denied.

We review for abuse of discretion the district court's denial of a motion for mistrial. *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994).  Five factors have been identified as relevant to determining whether mistrial is warranted by an improper reference to an unrelated arrest:  "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003), *cert. denied*, 540 U.S. 1198 (2004).

Despite defendant's argument to the contrary, the remark was clearly unsolicited and the prosecutor's question about whether Harris had come to his attention during the course of the investigation was reasonable.  Defendant argues that the limiting instruction was ambiguous and may have unintentionally caused the jury to consider arrests for "drug dealing" that were to be excluded because the jury may not have understood the distinction between the prior "drug dealing" and the "drug trafficking" that was part of the relevant investigation.  Certainly, the instruction could have been more clear.  When read in context, however, it instructed the jury to disregard the testimony about the prior arrests not part of this investigation into drug trafficking.  Defense counsel seemed to understand it at the time, and did not request clarification when the motion for mistrial was later denied.  Finally, the reference to the prior arrests was only a small part of the evidence against Harris.  Accordingly, we find no abuse of discretion in the decision denying Harris's motion for mistrial.

### 3.     Henderson

Henderson claims that he was prejudiced by the failure to specifically instruct the jury not to infer guilt from the pleas of cooperating witnesses, and by the admission of evidence that Garrett made two crack sales within 1000 feet of a school.  He also urges us to review his claim of ineffective assistance of counsel.

#### a.     Jury Instruction

Emphasizing that much of the evidence against him came from cooperating witnesses, Henderson notes that three of them were codefendants in this case (Eddie Thomas, Al Hatter, and Herb Hatter), three were coconspirators charged in the first case (Turner, Philon, and Hamilton), and one was a cooperating witness from another case (Kirkwood).  Their pleas were not admissible as substantive evidence of Henderson's guilt, but were relevant and admissible evidence concerning the credibility of those witnesses.  *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986). While the defendant is entitled to a limiting instruction upon request when such evidence is admitted, the failure to request one restricts our review to plain error.  *Id.*; *see also Maliszewski*, 161 F.3d at 1003-04.

In this case, the district court's instructions addressed generally the credibility of witnesses who entered into agreements with the government, advised the jury that its decision on any one defendant must not influence its decision on any other defendant, and cautioned that the possible guilt of others should not influence its decision in any way.  In addition, the potential prejudice is lessened when a cooperating witness has testified to the specific facts underlying the offense, because it is reasonable to believe the jury relied on the testimony concerning the facts of the case to decide the defendant's guilt and the testimony about the guilty plea to assess the credibility of the cooperating witness.  *Christian*, 786 F.2d at 214.  Finally, the fact that the jury acquitted Chaney and failed to reach a verdict as to Brown suggests that the jury did not infer guilt simply from the fact that many of the coconspirators had entered guilty pleas.  *Maliszewski*, 161 F.3d at 1004.  We find no plain error in the district court's failure to give the specific instruction sua sponte.

#### b.     Near-School Drug Sales

Next, Henderson argues that the district court erred in permitting the government to elicit testimony in its case-in-chief that Garrett made two crack cocaine sales to a confidential informant inside a residence located across the street from a school.  The government offered this evidence because, although no substantive offense was charged under 21 U.S.C. § 860, the government intended to seek an enhancement under the guidelines and anticipated that the question would have to be submitted to the jury in accordance with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Counsel for Henderson objected on the grounds that it would be prejudicial to allow the jury to infer that the defendants were selling drugs to children.  Henderson was not involved in those transactions, but argued that the inference would taint him by association.

When the government's proposed stipulation was not accepted, the district court permitted the evidence with the caveat that the witness make clear that the two drug sales in question were not to persons under 21 years of age.  Although this was done, Henderson argues that this did not ameliorate the danger that the jury might be misled into believing that Garrett, and Henderson by association, might sell drugs to children.  We find no abuse of discretion in the admission of this evidence.

#### c.     Ineffective Assistance of Counsel

"As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the

record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990); *see also United States v. Brown*, 332 F.3d 363, 368 (6th Cir. 2003). This court has "'routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on this issue.'" *Brown*, 332 F.3d at 369 (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)); *see also Massaro v. United States*, 538 U.S. 500, 504-05 (2003). In urging that these claims be considered, Henderson argues that they are based on the docket sheet and trial transcript. Given the fact-specific nature of the claims and the absence of a record directed at whether counsel's performance was deficient, we decline to address the merits of Henderson's ineffective-assistance-of-counsel claims on direct appeal.

**D.     Alleged Inconsistencies between Indictment and Judgments**

"A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003) (citing *Stirone v. United States*, 361 U.S. 212 (1960)). Defendants argue that several variances between the charge in the indictment and their convictions constitute constructive amendment.

**1.     21 U.S.C. §§ 841(a) and 846**

Pointing to the statutory references listed in their judgments of conviction, Harris, Martinez, and Garrett argue that they stand convicted not only of conspiracy under 21 U.S.C. § 846, but also of the substantive offense of distribution and possession with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1). As a result, they claim that it was error not to have separately instructed on the elements of the substantive offense. While a defendant may be charged with both conspiracy and the underlying substantive drug offense, the record in this case reflects that the indictment charged only one offense and that the jury was instructed that there was only one offense—conspiracy under 21 U.S.C. § 846 to distribute and possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 841(a)(1). Notwithstanding the reference to both § 846 and § 841(a)(1) in the judgments of conviction, each judgment states that the defendant was found guilty on a single count, count 1 of the indictment, and describes the nature of the offense as "conspiracy to distribute and possess with intent to distribute" controlled substances. The defendants' contention that they were convicted of an uncharged substantive offense is without merit.

**2.     21 U.S.C. § 860**

On the other hand, the government concedes that Garrett's judgment of conviction improperly references 21 U.S.C. § 860, which is a separate offense with enhanced penalties for one who violates § 841(a)(1) by distributing, possessing with intent to distribute, or manufacturing a controlled substance within 1000 feet of a school. *See United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 952-53 (8th Cir. 2001) (holding § 860 is separate offense from § 841(a)). Because this separate offense was not charged in the indictment either as an object of the conspiracy or as a substantive offense, Garrett's judgment of conviction must be amended on remand to delete the reference to 21 U.S.C. § 860. In addition, as will be discussed below, the government concedes that it was error for the district court to impose an enhancement under the guidelines in the absence of a conviction under 21 U.S.C. § 860.

### 3.     21 U.S.C. § 841(b)(1)(A) and (B)

First, Harris, joined by Martinez, claims constructive amendment resulted because the indictment did not explicitly reference the statutory penalty provisions in 21 U.S.C. § 841(b). The indictment in this case specified the amounts of cocaine, cocaine base, and marijuana allegedly involved in the conspiracy, but did not reference § 841(b). To impose greater penalties based on the quantity of drugs, *Apprendi* requires, as was done in this case, that the question of drug quantity be submitted to the jury and proved beyond a reasonable doubt. *United States v. Darwich*, 337 F.3d 645, 654-55 (6th Cir. 2003). The issue here, however, is whether the statutory penalty provisions are elements that must be explicitly alleged in the indictment. Rejecting a similar argument in *Brown*, 332 F.3d at 369, this court explained:

> Based on *Apprendi*, Brown argues that the penalties under 21 U.S.C. § 841(b) are essential elements of the offense, and, therefore, must be explicitly alleged in the indictment. There is no support in *Apprendi* for requiring an indictment to reference the penalty provisions of § 841(b) where the indictment properly sets forth specific drug quantities and puts the defendant on notice of all the elements of the offense that would increase the penalty for the crime beyond the statutory maximum.

Likewise, since the indictment specified the quantities of drugs involved and the jury determined the quantities applicable to each defendant, the failure of the indictment to explicitly reference § 841(b) did not result in a constructive amendment of the indictment.

In the alternative, Harris argues that constructive amendment resulted because the indictment alleged *greater* quantities than the jury found had been proven beyond a reasonable doubt. That is, the quantities specified in the indictment corresponded to the greatest statutory penalties under § 841(b)(1)(A), but the jury found him responsible for quantities that corresponded to the lesser penalties under § 841(b)(1)(B). We have held that this results in neither a prejudicial variance from, nor a constructive amendment to the indictment because Harris was merely convicted of a lesser-included offense and all the elements of the former necessarily include those of the latter. *United States v. Solorio*, 337 F.3d 580, 590-91 (6th Cir.), *cert. denied*, 540 U.S. 1063 (2003).[10]

Except for finding that Garrett's judgment of conviction must be amended to remove reference to 21 U.S.C. § 860, we AFFIRM the convictions of Martinez, Garrett, Harris, and Henderson on one count of conspiracy to distribute and to possess with intent to distribute cocaine, cocaine base, and marijuana.

### III.

Defendants have raised various challenges to their sentences, some of which the government has conceded, and all of the defendants seek remand for resentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005). Although this appeal was filed pre-*Booker*, each of the defendants asserted a Sixth Amendment claim in reliance on *Blakely v. Washington*, 542 U.S. 296 (2004). Defendants' reply and supplemental briefs address application of *Booker* to their sentences, and at oral argument the government conceded that resentencing is required. Our review is for plain error because none of the defendants raised Sixth Amendment claims in the district court. *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005).

The Supreme Court in *Booker* held that the Sixth Amendment applies to the federal sentencing guidelines such that "[a]ny fact (other than a prior conviction) which is necessary to

---

[10]Although Martinez joined in this alternative argument, it is inapplicable to him because the jury found him responsible for quantities of drugs corresponding to the greater penalties under § 841(b)(1)(A).

support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. Remand for resentencing is required under *Booker* when a defendant's sentence was imposed in violation of the Sixth Amendment. *Oliver*, 397 F.3d at 377-78; *see also United States v. McDaniel*, 398 F.3d 540, 547-50 (6th Cir. 2005).

In addition, the remedy adopted in *Booker*, excising the provision making the guidelines mandatory, was held to apply to all defendants who were sentenced under the mandatory guideline scheme even if they did not suffer a Sixth Amendment violation. In the absence of a Sixth Amendment violation, a defendant sentenced under the mandatory guidelines is entitled to resentencing under *Booker* unless there is evidence in the record to rebut the presumption of prejudice. *United States v. Barnett*, 398 F.3d 516, 529 (6th Cir.), *petitition for cert. dismissed*, 73 U.S.L.W. 3735 (Sept. 20, 2005) (No. 04-1690).

## A.      Garrett

The district court determined that Garrett's guideline range, based on a total offense level of 42 and a criminal history score of 1, was 360 months to life. Starting at the bottom of the guidelines and after giving credit for 21 months served on a state sentence, Garrett was sentenced to a term of 349 months' imprisonment. We vacate Garrett's sentence and remand for resentencing consistent with this opinion and in light of *Booker*.

First, as discussed above, although the district court added one point under USSG § 2D1.2 based on the jury's finding that drugs were sold within 1000 feet of a school, the government concedes that this guideline cannot be applied in the absence of a conviction under 21 U.S.C. § 860. *See United States v. Clay*, 39 Fed. Appx. 176, 177 (6th Cir. 2002) (unpublished decision). This error in itself requires resentencing.[11]

Second, as with each of the defendants, the district court increased the offense level based on higher drug quantities than were found by the jury. The jury found Garrett guilty of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. At sentencing, the district court found Garrett responsible for the equivalent of more than 150 kilograms of cocaine, resulting in a base offense level of 38. Three additional points also were added for Garrett's role in the offense as a manager or supervisor under USSG § 3B1.1(b).

The imposition of the mandatory sentence based on judge-found facts concerning drug quantity and the defendant's role in the offense increased Garrett's sentence beyond that which was supported by the jury's verdict and violated the Sixth Amendment. *Booker*, 125 S. Ct. at 756 (quantity); *United States v. Milan*, 398 F.3d 445, 450 (6th Cir. 2005) (§ 3B1.1). The error was plain, it affected Garrett's substantial rights, and such a violation seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Oliver*, 397 F.3d at 378. Thus, Garrett is entitled to resentencing under *Booker*.

## B.      Martinez

Martinez was sentenced at the bottom of the guideline range to a term of 292 months' imprisonment. The jury found Martinez responsible for 5 or more kilograms of cocaine and 100 kilograms (but less than 1,000 kilograms) of marijuana. The  district court found Martinez

---

[11]Amended effective November 1, 2000, the application notes to § 2D1.2 specifically provide that the enhancement may be applied only when the defendant is convicted of or stipulates to a statutory violation of drug trafficking in a protected location or involving an underage or pregnant person. USSG § 2D1.2 (comment n.1).

responsible for 115 kilograms of cocaine and 394.5 kilograms of marijuana, corresponding to an offense level of 36. Four additional points were added for Martinez's role in the offense as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). The increase in the guideline range and the mandatory guideline sentence resulting from judicial factfinding concerning the quantity of drugs and/or the defendant's role in the offense, violated the Sixth Amendment and requires that we vacate his sentence in accordance with *Booker*.[12]

Martinez also asserted that his sentence must be vacated and the case remanded for resentencing because he was not afforded the opportunity for allocution as required by Fed. R. Crim. P. 32(i)(4)(A)(ii) (stating that sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence"). *United States v. Riascos-Suarez*, 73 F.3d 616, 627 (6th Cir. 1996); *United States v. Thomas*, 875 F.2d 559, 563 (6th Cir. 1989). The record indicates that although Martinez was addressed regarding the presentence report, the district court did not personally and unambiguously invite Martinez to speak on his own behalf. *United States v. Edgecomb*, 910 F.2d 1309, 1315 (6th Cir. 1990) (holding that inquiry concerning presentence report not sufficient). The government concedes that resentencing is required under *Riascos-Suarez* since the district court made an adverse sentencing ruling without providing an opportunity for allocution. To assure that the opportunity for allocution is meaningful, the sentencing hearing must be conducted anew as if the defendant had never been sentenced. *Riascos-Suarez*, 73 F.3d at 627-28.

Finally, Martinez argues that the district court failed to make adequate findings in imposing the four-level enhancement under § 3B1.1, as required by Rule 32(i)(3) "for any disputed portion of the presentence report or other controverted matter." *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003) (holding that reliance on the presentence report cannot be substituted for ruling on disputed matter). Defendant urges that we remand for further findings, or conduct a de novo review of the issue. Since the sentencing hearing must be conducted anew as if the defendant had never been sentenced, it is not necessary to decide whether the original findings satisfied Rule 32(i)(3).

## C.     Harris

Harris's sentencing guideline range, based on an offense level of 32 and a criminal history score of 2, was 135 to 168 months. The district court sentenced Harris to a term of 130 months, after giving him credit for 21 months served in state custody. The jury found Harris guilty of conspiracy to distribute or possess with intent to distribute 500 grams but less than 5 kilograms of cocaine, and 5 grams but less than 50 grams of cocaine base. At sentencing, the district court found Harris responsible for a greater quantity of cocaine (5517 grams or more than 5.5 kilograms), corresponding to a base offense level of 32. It appears that the district court increased the offense level based on its finding regarding drug quantity and imposed a mandatory sentence based upon such judicial factfinding, which would violate the Sixth Amendment and require resentencing under *Booker*.

Even if further inquiry were to show that the offense level was not higher as a result of this finding, resentencing would nonetheless be required under *Barnett*. The presumption of prejudice under *Barnett* may be rebutted with "clear and specific evidence" that the district court would not have imposed a lower sentence under an advisory guideline scheme. *Barnett*, 398 F.3d at 529. The

---

[12]Even if no Sixth Amendment error were found, resentencing would be required under *Barnett*. The statutory minimum for the offense under § 841(b)(1)(A) was 20 years (240 months); the guideline range was 292-365 months; defendant was sentenced at the bottom of the guideline range; and the district judge said it "grieved" him to have the obligation to sentence someone to a term that long.

record does not reflect such "clear and specific" evidence, nor is a middle-of-the-range sentence imposed under a mandatory guideline scheme sufficient to rebut the presumption. *Id*. Thus, even in the absence of a Sixth Amendment violation, Harris is entitled to resentencing under an advisory guideline scheme.

Harris also argues, for the first time on appeal, that the district court erred by including one point in his criminal history score that resulted in an increase in his criminal history category from I to II. Harris argues that his 1994 conviction for "attempted drug abuse" should not have been counted as a prior sentence because it was "part of the instant offense." USSG § 4A1.2(a)(1). The conviction certainly arose during the period of the conspiracy, and a 1997 conviction for "drug abuse" arising out of an incident that was charged as an overt act was not counted as a "prior sentence." The government argues that the conviction was properly counted under § 4A1.1(c) because Harris's attempt to *use* drugs was not necessarily part of the charged offense. We are unable to determine whether this conviction was properly counted because the presentence report indicates that details concerning the offense had not been obtained. Because resentencing is required under *Booker*, determination should be made on remand whether this prior sentence should be included in Harris's criminal history score.

## D.    Henderson

As with the other defendants, the district court found Henderson responsible for greater quantities of drugs than were found by the jury and determined his base offense level to be 32. Henderson concedes in a supplemental brief, however, that this judicial factfinding did not affect his sentence because the district court also found him to be a career offender under USSG § 4B1.1. That resulted in an increase in his offense level to 37 and, with a criminal history category VI, resulted in a guideline range of 360 months to life. The career offender enhancement is based on the fact of his prior convictions and does not violate the Sixth Amendment. *Booker*, 125 S. Ct. at 756; *see also United States v. Bradley*, 400 F.3d 459, 462 (6th Cir.) ("From *Apprendi* to *Bradley* to *Booker*, the Court has continued to except such factfinding from the requirements of the Sixth Amendment."), *cert. denied*, 126 S. Ct. 145 (2005).

Henderson maintains instead that resentencing is required under *Barnett* because he was sentenced under the then-mandatory guidelines and the record does not contain "clear and specific" evidence to rebut the presumption of prejudice. We agree. The district court not only sentenced Henderson at the bottom of the guideline range, but also expressed "regret" in finding the guidelines were supportable by the record and "reluctantly" sentenced Henderson to a term of 360 months' imprisonment. Accordingly, we vacate Henderson's sentence and remand for resentencing in light of *Booker*.

We **AFFIRM** the defendants' convictions, **VACATE** the sentences of all four defendants and **REMAND** for resentencing consistent with this opinion.

---

**CONCURRENCE**

---

RONALD LEE GILMAN, Circuit Judge, concurring. I concur in the lead opinion, but write separately because I believe that whether the incarcerated author of the anonymous letter was still an active coconspirator is a factor that should be analyzed separately from the question of whether the conspiracy was ongoing. *See* Fed. R. Evid. 801(d)(2)(E) (establishing that a statement is not hearsay when "made *by a coconspirator* of a party during the course and in furtherance of the conspiracy") (Emphasis added.) The lead opinion seems to assume that the author remained an active conspirator simply because he was writing about the ongoing conspiracy. I can well imagine instances, however, where an incarcerated author or speaker might make statements about a conspiracy from which he has recently withdrawn, a circumstance that would render the writing inadmissible under Rule 801(d)(2)(E). An established analytical framework is therefore preferable to an ad hoc determination in this area.

To start with, I agree that "ordinarily, a person's participation in a conspiracy ends when the person is arrested for his role in the conspiracy." *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) (citation omitted). As the lead opinion correctly observes, however, "an arrested coconspirator does not always terminate his involvement in an ongoing conspiracy," Op. at 6. It therefore properly declines "to hold that statements made during incarceration automatically fall outside the scope of Rule 801(d)(2)(E)." *United States v. Howard*, 115 F.3d 1151, 1156 (4th Cir. 1997).

But when the government seeks to admit a statement made by an alleged coconspirator after incarceration, it has the burden of proving not just that the statement was "made in the course and in furtherance of the conspiracy," Op. at 5-6, but also that the declarant remained a coconspirator at the time of the statement. This view is supported by both the plain language of the rule and by the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171, 175 (1987), which established that the party seeking admission of a statement under Rule 801(d)(2)(E) must prove by a preponderance of the evidence "that the statement actually falls within the definition of the Rule."

Although relevant statements made during the course and in furtherance of the conspiracy will usually be made by a coconspirator, we should not assume that these two requirements are mutually inclusive, especially where the alleged coconspirator has been imprisoned for his role in the conspiracy. Instead, I would adhere to the principle enunciated in *Arce* and presume that statements made by the incarcerated declarant "ordinarily" fall outside of the nonhearsay category established by Rule 801(d)(2)(E). *Arce*, 997 F.2d at 1128.

Whether the presumption that the arrested declarant is no longer a coconspirator is characterized as a starting point for the analysis or as a formal rebuttable presumption is of little significance because the government has the ultimate burden of proving admissibility under 801(d)(2)(E) by a preponderance of the evidence. *See United States v. Robinson*, 390 F.3d 853, 881 (6th Cir. 2004) ("When the government seeks to introduce a co-conspirator statement under [Rule 801(d)(2)(E)], it must establish by a preponderance of the evidence that 'there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.'") (quoting *Bourjaily*, 483 U.S. at 175-76).

The approach that I propose should not materially limit the government's ability to meet its burden. To the contrary, the government can rely on circumstantial evidence, including the contents of the statement itself, *see Bourjaily*, 483 U.S. at 176-80 (permitting courts to consider the contents of statements by alleged coconspirators "in determining whether a conspiracy exists and whether

the [declarant] was a member of it"), to show by a preponderance of the evidence that the declarant "managed to continue conducting the business of the conspiracy after arrest" and incarceration. *United States v. Davis*, 226 F.3d 346, 353 (5th Cir. 2000). Absent evidence of this sort, however, the declarant's role in the conspiracy will have ended, and with it the declarant's status as a coconspirator.

Even though I believe that the present case is a close one under the approach that I have outlined, I ultimately agree with the lead opinion that the government met its burden of satisfying Rule 801(d)(2)(E)'s requirements by a preponderance of the evidence. The letter was written by someone incarcerated in the Milan, Michigan prison in connection with the very drug trafficking conspiracy involving the present defendants. Investigators found the letter at the home of Garrett's girlfriend, a location to which Garrett had obvious and continuing connections. The author of the letter both acknowledged having previously sent the recipients information related to the law enforcement investigation and advised the recipient how best to proceed in the face of increased risks. Although some of the remarks seem designed to conceal a completed crime—statements that the Supreme Court has held are not in furtherance of a conspiracy, *see Krulewitch v. United States*, 336 U.S. 440, 444 (1949)—the lead opinion convincingly characterizes other statements in the letter as facilitating the continuation of an existing criminal operation. Op. at 6.

Because the government did not need to prove to an absolute certainty that the letter's anonymous author remained a coconspirator, but only that the author "was more likely than not a conspirator," *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985), I agree with my colleagues that the letter was properly admitted into evidence as nonhearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence. I therefore join the lead opinion's disposition of these cases.