*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0258P (6th Cir.)
File Name: 03a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*

EULRIC WARE,
  *Defendant-Appellee.*

No. 01-6031

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 00-00059—John G. Heyburn II, Chief District Judge.

Argued: December 10, 2002

Decided and Filed: April 30, 2003[*]

Before: NORRIS and GILMAN, Circuit Judges;
McKEAGUE, District Judge.[1]

---

[*] This decision was originally issued as an "unpublished decision" filed on April 30, 2003. On July 1, 2003, the court designated the opinion as one recommended for full-text publication.

[1] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Stephen H. Miller, FORE, MILLER & SCHWARTZ, Louisville, Kentucky, for Appellee. **ON BRIEF:** Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Stephen H. Miller, FORE, MILLER & SCHWARTZ, Louisville, Kentucky, for Appellee.

---

## OPINION

---

DAVID W. McKEAGUE, District Judge. A grand jury indicted Eulric Ware for knowingly and intentionally attempting to possess cocaine in violation of 21 U.S.C. § 812. On Ware's motion and after a suppression hearing, the district court issued an order suppressing (1) defendant's post-custodial inculpatory statements to police, and (2) evidence seized from defendant's apartment pursuant to a state search warrant. The government appeals, challenging the district court's order granting defendant's motion to suppress. For the reasons set forth below, we **REVERSE** the judgment of the district court.

### I. BACKGROUND

#### A. Factual Background

Early in the morning on February 8, 2000, Detective Sherman Dotson of the Louisville Police Department narcotics unit noticed a suspicious package at the Federal Express facility in Louisville, Kentucky. The heavily taped package had been shipped from Daytona Beach, Florida, to "David Jones" at 1426 South First Street in Louisville.

Detective Dotson set the package aside after a trained narcotics dog alerted on it, indicating the presence of a controlled substance.

At 9:30 a.m., Detective Dotson, with the assistance of Detective Brian Nunn, obtained two search warrants. The first authorized them to open the package itself. The second authorized them to insert an electronic tracking device and to enter any structure to seize the package if the device indicated that the package had been opened.

The detectives then executed the warrant on the package and found a pair of basketball shoes, each containing approximately one fourth of a kilogram of cocaine. After removing all but one gram of the cocaine, the detectives inserted the tracking device and resealed the package in preparation for a controlled delivery.

At that time, Detective Eddie Napier drafted an affidavit and application for a warrant authorizing a search of the delivery address. A state court judge signed the warrant ("the Napier warrant") around 10:00 a.m. While the face of this warrant authorized in boilerplate terms an "immediate search" of the premises, the supporting affidavit stated that "[o]n 02-08-2000 a controlled delivery of this parcel will be attempted." All of the officers involved considered this to be an anticipatory warrant.

Armed with the Napier warrant and the package, the police made the controlled delivery around 2:30 p.m. Defendant Eulric Ware signed for the package as "David Jones" and took it inside his apartment. Several minutes later, Ware left the apartment carrying an opaque shopping bag, and the electronic monitor indicated to the police surveillance team that the package was moving.

Ware then drove to the University of Louisville campus and parked in a semi-circular driveway. At this time officers arrested Ware, read him his *Miranda* rights, and retrieved the shopping bag, which contained the package with the cocaine. The police then took Ware back to his apartment and searched it in reliance on the Napier warrant. Drug paraphernalia and a weapon were recovered.

Next, while being transported to police headquarters for booking, Ware inquired about "helping himself out." Upon arriving at the station, the police took Ware to an interview room equipped with audio and video recording equipment. Detectives Pitcock and Nunn then entered the room and again advised Ware of his *Miranda* rights. After Ware indicated that he was a "little hazy" about the meaning of his rights, Detective Nunn read them again, stating that they "are very, very important to you." Ware then asked: "So, right now I can have an attorney while I talk to y'all?," to which Nunn replied, "Sure can, that's your legal right." Soon after, Ware stated: "I'd just rather have an attorney, man."

After Ware requested counsel, the detectives located a telephone book and helped defendant recall the name of an attorney he had heard of. To this end, the police asked Ware questions concerning that attorney's race and practice area. When Ware ultimately identified attorney Stephen Miller, Detective Nunn left the room to place a call to Miller's office. Detective Pitcock, who apparently knew Ware prior to this arrest, remained in the room and chatted with him about his mother and about how he knew Miller.

Detective Nunn returned to the room several minutes later and the following exchange occurred:

Nunn:   Unfortunately, [Miller's] not in the office today. They said his secretary's not in the office and I left a message on his answering machine. If he gets in anytime soon, I gave him my pager number and asked him to call us. So, that's the best I can do here. Any other suggestions or guesses?

Ware:   I'll just talk, that's all, you know, just forget it.

Nunn:   Here's the deal, I don't want you to just forget it cause we couldn't get a hold of one attorney. I mean, let's, if you're comfortable talking, I'm fine with that, but I need to make sure that you're fine with that.

Ware:   I can always stop, right?

Nunn:   Oh yeah, yeah. Like I read your rights, if you decide hey I don't want to talk no more, that's fine. And like I said, I'll just kind of lay it out again, what we know and then if you want to try and help yourself.

Ware agreed to talk and subsequently gave inculpatory statements.

## B.  Procedural Background

On May 2, 2000, a grand jury returned an indictment charging defendant with knowingly and intentionally attempting to possess cocaine on or about February 8, 2000. After defendant moved to suppress several items of evidence, the magistrate judge held a suppression hearing and issued a report and recommendation that Ware's motion be denied in its entirety.

Conducting a *de novo* review, the district court departed from the magistrate judge's recommendation in two respects. First, the district court concluded that the Napier warrant was technically deficient as an anticipatory warrant, was not supported by probable cause as a standard warrant, and that the good faith exception to the warrant requirement did not apply. In suppressing the evidence, the court found: "In sum, the sheer absence of corroborating information in the affidavit supporting the Napier warrant coupled with the breadth of the warrant itself renders reliance on the warrant objectively

unreasonable and, therefore, fruits of the search will be excluded."

Second, the district court concluded that the detectives did not sufficiently break off their interrogation of defendant after he requested counsel. As a result, the court suppressed the incriminating statements defendant gave the officers. The court concluded that "the officers, perhaps innocently enough, continued their conversation with Ware. Under these circumstances, one can reach no conclusion other than Defendant's incriminating statements occurred in the same custodial interrogation as his initial request for counsel." The government then brought this timely appeal.

## II.  ANALYSIS

When reviewing a district court's decision on a motion to suppress, this Court reviews its findings of fact for clear error and its conclusions of law *de novo*. *See United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002).

## A.  Confession

The government first contends that the district court erred in suppressing defendant's confession. The district court's ruling was premised on the notion that the officers' interrogation of Ware did not cease when he requested counsel, that his statements were given in the same custodial interrogation as defendant's initial request for counsel, and that defendant did not sufficiently initiate discussion of the crime or waive his right to counsel.

Under the *Edwards* rule, once an accused has invoked the right to counsel, the police must cease interrogation until counsel has been made available, unless "the accused himself initiates further communication, exchanges, or conversations" with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85.

In this case, it does not appear that interrogation of Ware ever began. The Supreme Court has defined interrogation as "express questioning . . . [or] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innes*, 446 U.S. 291, 301 (1980). Here, the only questions police asked of Ware upon entering the interview room pertained to Ware's understanding of his *Miranda* rights. Such questions do not constitute interrogation. *See United States v. Avery*, 717 F.2d 1020, 1024 (6th Cir. 1983)(no interrogation where police asked routine booking questions unrelated "even tangentially, to criminal activity" and there was "no evidence that the defendant was particularly susceptible to these questions, or that police somehow used the questions to elicit an incriminating response from the defendant.").

The district court concluded that all questions the police asked Ware after he invoked his right to counsel comprised further unlawful interrogation. These questions, however, were principally aimed at finding Ware an attorney. Another question related to the current whereabouts of Ware's mother. Taken in context, these questions were not even tangentially related to criminal activity, nor did they hint at eliciting incriminating information or prey on any particular susceptibility of the defendant.

Next, the district court concluded that defendant agreed to talk only in response to Detective Nunn's question: "Any other suggestions or guesses?" While if taken out of context this could be construed as interrogation, it is more reasonable to conclude that Nunn's question, posed immediately after informing defendant that attorney Miller could not be reached, was aimed at acquiring counsel for defendant rather than at eliciting incriminating information.

As *Edwards* counsels, a defendant who has invoked his right to counsel may himself lawfully initiate discussion of

the crime. *See Edwards*, 451 U.S. at 484-85. Here, Ware stated, "I'll just talk, that's all, you know, just forget it." Defendant was not prompted to talk by police interrogation, but rather "evinced a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). Therefore, defendant sufficiently initiated discussion of the crime after invoking his right to counsel.

Although Ware initiated the conversation, it is still necessary to determine whether he validly waived his rights to counsel and to remain silent. *See Edwards*, 451 U.S. at 486 n.9. Such a waiver must, in the totality of the circumstances, be knowing and intelligent. *See id.* Here, defendant was advised of his *Miranda* rights three times before attempting to contact an attorney and ultimately deciding to talk. In agreeing to talk, defendant specifically confirmed that he could stop talking at any time, indicating that he understood his rights. Furthermore, there is no evidence of police coercion, threats, or promises. From the totality of circumstances, defendant knew what his rights were and waived them.

In sum, given that defendant sufficiently initiated discussion of the crime and validly waived his rights to remain silent and to counsel, his subsequent confession was voluntary and should not have been suppressed.

## B.  Warrant

The government further contends that the district court erred in suppressing evidence seized pursuant to the Napier warrant. The district court ruled that the warrant was technically deficient as an anticipatory warrant, was not supported by probable cause as a standard warrant, and did not fit within the good faith exception to the exclusionary rule.

On review, this Court need not reach the validity of the warrant, as it can turn immediately to consider the application of the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897, 925 (1984)("[R]eviewing courts could . . . reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith.").

In *Leon*, the Supreme Court held that the exclusionary rule should not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant that is later found to be invalid. *Id*. at 913. This "good faith" exception is not without limit, however, as the *Leon* Court identified four specific situations when it would not apply. *Id.* at 922-23. None of these specific situations are at issue here, however, as the district court's ruling was premised simply on whether the officer's reliance on the Napier warrant was objectively reasonable.

The *Leon* inquiry is limited to "the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. In making this determination, all the circumstances may be considered. *See id.*

In this case, the evidence presented at the suppression hearing revealed that the Louisville police intercepted a Federal Express package containing approximately one pound of cocaine. This package was addressed to a "David Jones" at the address of the apartment occupied by Ware. In addition, the package had been seized and opened pursuant to a search warrant, and all but one gram of cocaine had been removed. Finally, the police planned to make a controlled delivery of the package to Ware's apartment later that afternoon.

Armed with this information, Detective Napier applied for and received a search warrant that inadvertently authorized an

immediate search of the apartment. The language indicating "immediate" was boilerplate on the form of the warrant application. In the supporting affidavit, however, Napier specifically noted that a controlled delivery would be attempted that afternoon to the apartment. Indeed, the police executed this warrant in accordance with their belief that it was anticipatory, waiting until after the controlled delivery to search Ware's apartment.

Since "warrants and their supporting documents are to be read not hypertechnically, but in a commonsense fashion," *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002)(quotation marks and alteration omitted)(finding an anticipatory search warrant valid where the accompanying affidavit specified the triggering event), an objectively reasonable officer would likely have concluded that the warrant legally authorized a search of the apartment only upon the controlled delivery of the package. Furthermore, by waiting until after the controlled delivery to search Ware's apartment, "it is painfully apparent that . . . the officer[s] acted as [] reasonable officers would and should act in similar circumstances." *Leon*, 468 U.S. at 919-20, *citing Stone v. Powell*, 428 U.S. 465, 539-40 (1976)(White, J., dissenting). This being the case, the exclusionary rule should not operate to bar the fruits of the search of Ware's apartment.

Furthermore, suppressing the evidence obtained in this search would not serve the purposes of the exclusionary rule. *See Leon*, 468 U.S. at 918 ("[S]uppression of evidence obtained pursuant to a search warrant should be ordered only . . . in those unusual cases in which exclusion will further the purposes of the exclusionary rule."). This is not a case in which the exclusionary rule is needed to deter police or magistrate misconduct.

### III.  CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.