**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0149n.06
Filed: March 17, 2008

**Nos. 05-5815, 05-6665**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JARRETT DUNN and JARROD DUNN, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; and OBERDORFER, District Judge.[*]

SUTTON, Circuit Judge. Jarrett and Jarrod Dunn appeal their drug-distribution convictions and sentences. As to Jarrett, the district court did not err in denying his motions to suppress, it did not plainly err in charging him with separate counts for crack-cocaine and powder-cocaine conspiracies and it imposed a reasonable sentence. As to Jarrod, the verdict did not constructively amend the indictment, and the district court properly calculated the guidelines range.

I.

---

[*]The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

State detective Duff Brumley learned that twin brothers, Jarrett and Jarrod Dunn, were selling cocaine from an apartment in Cleveland, Tennessee. He and another officer went to the apartment, located on Gibson Drive, where they saw a black Cadillac registered to James Dunn.

That afternoon Brumley sought a search warrant, in support of which he submitted an affidavit, filled out a search warrant form and attached two documents that described the items to be seized and the places to be searched. The judge signed the search warrant and the affidavit, and he placed the affidavit under seal.

While Brumley obtained the warrant, another detective conducted surveillance of the Gibson Drive premises. When the Cadillac left the apartment, the second detective alerted a patrol officer who stopped the car, which contained Jarrod Dunn, Jarrett Dunn and Rusty Dyer. Brumley soon arrived and showed the warrant and attachments to Jarrett. The officers drove the men back to the apartment and searched it, finding baggies containing 41.7 grams of cocaine base in a large jacket, baggies with white residue in the trash and items with white residue in the dishwasher that looked like they had been used to cook crack cocaine.

A federal grand jury indicted Jarrett, Jarrod and two other defendants on several drug-related counts. Count one charged all four defendants with a conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; count two charged all four defendants with a conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine hydrochloride, *see id.*; and count five charged Jarrett and Jarrod

with possession with intent to distribute more than 50 grams of cocaine base, *see id.* § 841(a)(1), (b)(1)(A).

Jarrett and Jarrod pleaded not guilty and were tried separately. A jury found Jarrett guilty on all three counts, and the court sentenced him to concurrent 360-month sentences on each count. A jury found Jarrod guilty on counts one and five, and the court sentenced him to concurrent 145-month sentences on each count.

II.

A.

Jarrett first argues that the district court erred in denying his motion to suppress based on a defect in the warrant. "[N]o Warrants shall issue," the Fourth Amendment says, "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The parties agree that the police needed a warrant to search the Gibson Drive apartment, *see Payton v. New York*, 445 U.S. 573, 586 (1980); they disagree over whether the warrant "particularly describ[ed] the place to be searched."

In support of his warrant application, Brumley prepared a six-page affidavit detailing the place to be searched and the items to be seized. He also filled out a warrant form and attached two documents to it: Attachment 1 described the items to be seized, and attachment 2 described the places to be searched. The form included several spaces to describe the items to be seized and one

space to describe the place to be searched. In each of these spaces, the completed warrant form said, "see attachment 1 to search warrant," which led the reader only to a description of the items to be seized. While the form never mentioned attachment 2 by name, that document was attached to the form, and the form also made a general reference to the affidavit, "hereby referred to for its contents," contents that included the same description of the place to be searched as attachment 2.

Jarrett argues that, because the warrant read "see attachment 1" instead of "see attachment 2" in describing the premises to be searched, it fails. Even if we agreed with Jarrett on this point, however, the good-faith exception to the exclusionary rule would defeat his argument. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Watson*, 498 F.3d 429, 431 (6th Cir. 2007) (noting that we may consider the *Leon* good-faith exception without deciding the validity of the warrant). "[T]he exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88 (1984).

The conduct of Brumley and the other officers was "objectively reasonable." Brumley investigated the premises, obtained information from the local utilities company and checked the registration of the Cadillac in the driveway. He prepared a six-page affidavit and an attachment that thoroughly described the premises to be searched. While Brumley obtained the search warrant, another officer conducted surveillance on the described premises. When Brumley arrived, he gave the warrant form and the attachments to Jarrett and confined the search to those premises. *Cf. id.*

Under these circumstances, excluding the evidence against Jarrett would not "further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918; *see also id.* at 920 ("This is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."). Jarrett, notably, does not resist (or even respond to) the government's reliance on the *Leon* good-faith exception.

Nor, it bears adding, would suppressing the evidence further the purposes of the particularity requirement. "The chief purpose of the particularity requirement," we have said, "was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 441 (6th Cir. 2006) (en banc). In this case, the judge signed both the affidavit (which included a description of the premises to be searched) and the warrant form, and he had both attachments in front of him. *Cf. Groh v. Ramirez*, 540 U.S. 551, 554 (2004) (noting that the judge signed only the warrant form, not the application describing the items to be seized). "Rather than leaving reviewing courts in doubt whether the [judge] was aware of the scope of the search he was authorizing, this warrant made it clear that the [judge] understood and cabined the scope of the search he was authorizing." *Baranski*, 452 F.3d at 440 (internal quotation marks and citation omitted). A "commonsense and realistic" reading of the search warrant, *United States v. Ventresca*, 380 U.S. 102, 108 (1965), permits just one conclusion—the premises to be searched were those described in the affidavit and in the second attachment. As the district court judge correctly observed, "[if] somebody were to hand this

[warrant] to you and you were looking at it, and you saw both attachments, you would know what the description of the property was, would you not?"

This search warrant also satisfied another purpose of the particularity requirement:  to "assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."  *Baranski*, 452 F.3d at 441. Brumley gave the warrant and the attachments to Jarrett at the scene of the search, which indicated his lawful authority and his need to search.  Any reasonable reader of the documents, if he noticed a mistake at all, would understand the limits of the officers' power to search.  Two single-paged documents were attached to the one-page form, and one of them, labeled "ATTACHMENT 2 TO SEARCH WARRANT," plainly described the premises to be searched.  Other than attachment 2, nothing else described a place to be searched, and that attachment described just one location.

This case thus is not one where "'a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'"  *Groh*, 540 U.S. at 565 (quoting *Leon*, 468 U.S. at 923); *see also Sheppard*, 468 U.S. at 988 & n.5 (accepting that the warrant did not accurately describe the items to be seized and applying the good-faith exception to the exclusionary rule).  Unlike the warrant in *Groh*—which described a "two-story blue house rather than the alleged stockpile of firearms" where it should have described the items to be seized, 540 U.S. at 554—the accidental substitution of a "1" for a "2" in this case is not a "glaring deficiency that any reasonable police officer would have known was constitutionally fatal," *id.* at 564; *cf. id.* at 558 (noting that the warrant did not "make

what fairly could be characterized as a mere technical mistake or typographical error"); *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 479 (6th Cir. 2006) (upholding the validity of a search warrant where the street number of a beauty school was mistakenly typed as "937" instead of "931" in the warrant and affidavit); *id.* ("An error in description does not . . . automatically invalidate a search warrant."). "[W]here the error is one that can be characterized as a minor, unintentional drafting oversight; the error is unapparent by even a close read, let alone 'a simple glance'; and the error goes unnoticed by the officer who applied for the warrant, the judicial commissioner who issued the warrant, and the officers who executed the warrant, we cannot conclude that this is one of those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Watson*, 498 F.3d at 429 (internal quotation marks omitted). The *Leon* good-faith exception applies.

B.

Jarrett next argues that he did not "voluntarily" and "knowingly" waive his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As Jarrett sees it, his waiver did not satisfy these requirements because he was under the influence of Vicodin and marijuana at the time of his arrest. As we see it, the waiver was legitimate.

The key problem for Jarrett is that "coercive police activity" is required to establish an involuntary waiver, and he offers no such evidence. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding that a defendant's confession was voluntary, even though he was later diagnosed as suffering from psychosis, because there was no evidence of coercion). "Evidence that a defendant

suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). Absent coercion, we have held that a waiver was voluntary even where the defendant was under the influence of "an intoxicating medication in a dose more than five times that prescribed by state physicians," *United States v. Treadwell*, 11 F. App'x 502, 511 (6th Cir. May 24, 2001), and where the defendant who had been "drinking heavily" had a blood alcohol level of .25 percent, *Marcum v. Knight*, No. 89-6192, 1991 WL 1106, at *1, 3 (6th Cir. Jan. 8, 1991).

As the district court correctly found, there are "no allegations in this case . . . that the police were involved in any coercive action" in obtaining this waiver. Jarrett does not contest this finding, nor does he point to any evidence indicating that his waiver was coerced. There being no clear error with respect to this finding, we must uphold it. In the absence of coercive police activity, any effect that Vicodin and marijuana might have had on Jarrett's waiver thus cannot make it legally involuntary. *See Treadwell*, 11 F. App'x at 511; *Marcum*, 1991 WL 1106, at *3.

Nor, at any rate, has Jarrett shown that the drugs made his waiver unknowing. The night before his arrest, Jarrett broke his hand playing basketball. As a result of the accident, he took two five-milligram pills of Vicodin before he went to bed, one when he woke up around 8:30 or 9:00 a.m. and two more around 10:00 a.m. He began smoking marijuana "[a]s soon as [he] got up" and continued "smoking marijuana all morning." Jarrett admits he has smoked an ounce of marijuana

every day for seven years, and he is "[b]asically" under the influence of marijuana whenever he makes any decision, including apparently this one.

When Brumley gave the defendants their *Miranda* warnings, he asked whether anyone had taken any medication. When one person responded he had, Brumley asked if it was mind-altering, and no one responded. Brumley also testified that, when he read the men their *Miranda* rights, Jarrett "was very alert, cognizant of what was going on" and was "sharp as a tack." Jarrett "was quick responding [to] questions," "had a lot of valuable input on things" and "appeared to be . . . in the same frame of mind as" the other men and "any of the agents or detectives that were there." After Jarrett waived his rights, he disclosed at least one of his cocaine supply sources and placed a call to a source.

Jarrett argues that "Detective Brumley is lying," he never received a *Miranda* warning, he did not answer any questions and he never made any phone calls. The Vicodin and marijuana, he adds, made him feel drowsy and contributed to a "lack of comprehension," and he was "[n]ot really" able to make any important decisions. But at the same time, he acknowledges, he understood what a search warrant was, knew the police were looking for drugs and knew they were blaming him for the drugs they found in the apartment. He "fe[lt] like [he] was being set[] up" and "wasn't really worried about making [any] decisions" because "[i]t wasn't [his] apartment."

The district court accepted the magistrate judge's decision to credit Brumley's testimony that Jarrett "was alert and quick to respond to questions, and appeared to understand his *Miranda* rights,"

as well as the magistrate's finding that an audiotape recording "revealed that [Jarrett] was alert, coherent, and lucid" when Brumley read Jarrett his rights. Jarrett has not argued that the district court's findings were clearly erroneous, and he has not provided us with any reason to doubt the district court's credibility determination. Under these circumstances, the district court did not clearly err in finding that Jarrett's waiver was knowing and intelligent.

C.

Jarrett next argues that the prosecution violated his double-jeopardy rights because the first two counts of the indictment were multiplicitous. Jarrett did not raise this claim below, so we review it for plain error. *See United States v. Sublett*, 189 F. App'x 413, 415 (6th Cir. July 7, 2006).

No error, as an initial matter, occurred. While "an indictment may not charge a single criminal offense in several counts" without implicating multiplicity and double-jeopardy concerns, *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995), that is not what happened. Count 1 of the indictment charged him with conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, and count 2 charged him with conspiracy to distribute and possess with intent to distribute more than 5 kilograms of powder cocaine. Charging a defendant with separate counts for different statutory criminal offenses does not violate the multiplicity rule. *See United States v. Pope*, 561 F.2d 663, 669 (6th Cir. 1977); *see also United States v. Vargas-Castillo*, 329 F.3d 715, 719–20 (9th Cir. 2003); *United States v. Davis*, 55 F.3d 517, 521 (10th Cir. 1995) (holding

that "possession with intent to distribute crack and possession with intent to distribute powder cocaine are separate offenses for double jeopardy purposes").

Even had this not been the case, Jarrett's allegations of harm—"two separate sentences" and "a[n] impermissible cumulative punishment"—did not affect his substantial rights. That is because he received *concurrent* 360-month sentences on each count. Because "our merger of the first and second [counts] would have no practical effect on [Jarrett's] sentence," he cannot show that his substantial rights were affected. *United States v. Mann*, 195 F. App'x 430, 435 (6th Cir. Aug. 18, 2006).

D.

Jarrett challenges his within-guidelines sentence on procedural grounds and separately argues that it is unreasonably long. He is wrong on both fronts.

Jarrett's advisory guidelines range was 360 months to life, and the district court sentenced him to 360 months. In explaining the sentence, the court found it "very unfortunate" that Jarrett "d[id]n't realize that [he'd] done anything wrong," *see* 18 U.S.C. § 3553(a)(1); it accounted for the sentencing guidelines and Jarrett's career-offender status, *see id.* § 3553(a)(4); it emphasized the "seriousness of the offense," noting that "[c]ocaine and crack are serious maladies in this community, and in this part of the state and across this country[, a]nd it's very destructive stuff," *see id.* § 3553(a)(2)(A); and it considered the need to deter Jarrett from future crimes, explaining that

"[a]pparently . . . [Jarrett] did not get the message even after [his] prior drug convictions," *see id.* § 3553(a)(2)(B).

"[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require a lengthy explanation" because "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). In this setting, the question is whether "[t]he record makes clear that the sentencing judge listened to each argument," "considered the supporting evidence," was "fully aware" of the defendant's circumstances and took "them into account" in sentencing him. *Id.* at 2469.

The sentencing judge did not err in applying these requirements. He explained that he was resting his decision on the commission's reasoning and on Congress's decision to classify Jarrett as a career offender. *See id.* at 2468. He responded to the only arguments Jarrett's counsel raised—that his career-offender status and any drug amount over 50.5 grams must be proven beyond a reasonable doubt—by saying that the guidelines are advisory, that Jarrett was appropriately classified as a career offender and that the drugs attributed to Jarrett were "a conservative calculation." Counsel also argued for a below-guidelines sentence because Jarrett "is a fairly young man," he was "very cooperative" with his counsel, he "realizes that he's in a jam and he's not going to be around for a while" and the career-offender provisions "overstat[e] the seriousness of his problem." In response to these arguments, the court emphasized that Jarrett "d[id]n't realize that [he'd] done anything

wrong," noted the seriousness of the offense and considered the need for deterrence based on Jarrett's prior drug convictions. In our view, "[t]he record makes clear that the sentencing judge listened to each argument," "considered the supporting evidence," was "fully aware" of the defendant's circumstances and took "them into account" in sentencing him. *Id.* at 2469.

As for Jarrett's argument that the court failed to consider the disparity between his sentence and that of his co-defendants, the relevant provision—18 U.S.C. § 3553(a)(6)—"is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). The court thus was "not *required* to consider that type of disparity," *id.* at 624, even if Jarrett had asked the court to consider it (which he did not).

Jarrett's passing challenge to the length of the sentence fares no better. A within-guidelines sentence, like this one, receives a presumption of reasonablenesss. *Rita*, 127 S.Ct. at 2463; *United States v. Carter*, 510 F.3d 593, 601 (6th Cir. 2007). Jarrett has made no effort to rebut that presumption, *see Rita*, 127 S.Ct. at 2463, and he has given us no reason to doubt the reasonableness of the district court's decision to sentence Jarrett at the bottom of the guidelines range.

Precedent forecloses Jarrett's next argument—that sentencing facts found in calculating an advisory guidelines range must be proved beyond a reasonable doubt. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). And it likewise forecloses his last argument—that the *Booker* "reasonableness" standard is "novel," "nebulous" and overly broad, and results in "unpredictability

and inconsistent application." True or not, the standard is the one the Supreme Court has created; it is the one the Court continues to follow, *see Gall v. United States*, 128 S. Ct. 586, 597 (2007); *Kimbrough v. United States*, 128 S. Ct. 558, 574–76 (2007); *Rita*, 127 S. Ct. at 2465, and it is the one we must follow.

IV.

A.

Jarrod argues that the verdict reflects an impermissible amendment or variance of the indictment. We disagree.

The Fifth Amendment prohibits the evidence introduced at trial from "broaden[ing] the charge contained in an indictment." *United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002). There are two classic types of modifications to an indictment: a variance and an amendment. A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Wade*, 266 F.3d 574, 583 (6th Cir. 2001) (internal quotation marks omitted) (alteration in original). A variance requires a new trial unless it was harmless. *Id.* An amendment "involves a change, whether literal or in effect, in the terms of the indictment" and is per se prejudicial. *Id.* at 582 (internal quotation marks omitted).

Because the verdict form permitted the jury to find him guilty of a conspiracy involving a lesser quantity of cocaine base (more than 5 grams but less than 50 grams, punishable under 21 U.S.C. § 841(b)(1)(B)) than the quantity alleged in his indictment (more than 50 grams, punishable under 21 U.S.C. § 841(b)(1)(A)), he argues that it constructively amended his indictment. Count one of the jury verdict form included interrogatories permitting the jury to find guilt with respect to two quantities: (1) more than 50 grams or (2) more than 5 grams but less than 50 grams. The jury found Jarrod guilty on count one, checked "no" on the more-than-50-grams interrogatory and checked "yes" on the 5-to-50-grams interrogatory. Jarrod concedes that he did not object to the verdict form and that plain-error review applies. *See United States v. Budd*, 496 F.3d 517, 528 (6th Cir. 2007). There is no error, much less plain error.

When a jury attributes a lower drug quantity to a defendant than the quantity in the indictment, we treat this change as a conviction based on a lesser-included offense, *see* Fed. R. Crim. P. 31(c), rather than a prejudicial variance or a constructive amendment to the indictment. *See United States v. Martinez*, 430 F.3d 317, 340 (6th Cir. 2005); *United States v. Newton*, 389 F.3d 631, 639 (6th Cir. 2004); *United States v. Solorio*, 337 F.3d 580, 590 (6th Cir. 2003); *United States v. Vazquez*, 49 F. App'x 550, 553 (6th Cir. Oct. 18, 2002). In *Martinez*, an indictment charged the defendants with a conspiracy relating to over 250 kilograms of cocaine and over 10 kilograms of cocaine base, *see* 21 U.S.C. § 841(b)(1)(A), but the jury returned special verdicts finding one defendant responsible for only 500 grams to 5 kilograms of cocaine and 5 to 50 grams of cocaine base, *see id.* § 841(b)(1)(B). *Martinez*, 430 F.3d at 323. On appeal, the defendant said the change

resulted in a constructive amendment, *id.* at 339, an argument we rejected, holding he "was merely convicted of a lesser-included offense and all the elements of the former necessarily include those of the latter," *id.* at 340. As in *Martinez*, Jarrod's "complaint here is merely that he was convicted of a lesser-included offense, which is perfectly appropriate under Federal Rule of Criminal Procedure 31." *Solorio*, 337 F.3d at 590.

Jarrod responds that "[n]either party requested an instruction on lesser included offenses" and that the drug-quantity interrogatory "inadvertently" was added to the verdict form. Whether the instruction was given inadvertently or not, counsel for the defendant still had an opportunity, and an obligation, to object to the instructions and proposed verdict form if he did not want the jury to have the option of convicting on a lesser-included offense—an option that in some settings may have as much potential to help a defendant as to hurt him. *Cf. United States v. Mays*, 69 F.3d 116, 119 (6th Cir. 1995).

In any event, the instruction does not establish plain error. Had the prosecutor requested this drug-quantity interrogatory, had Jarrod's counsel objected and had the district court nonetheless given the interrogatory, all agree (including Jarrod's counsel at oral argument) that the district court would not have erred. Only a most unusual application of the plain-error rule would permit counsel to win an argument because he *did not* object when he should have.

To the extent Jarrod argues he cannot be convicted of a lesser-included offense when he does not request that option, he is wrong. Federal Rule of Criminal Procedure 31(c)(1) advises defendants

that they "may be found guilty of . . . an offense necessarily included in the offense charged." A defendant need not request—or even consent—to a finding of guilt based on a lesser-included offense "because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge." *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000).

Nor were the jury instructions, when viewed as a whole, inconsistent with the verdict form. The court explained that the verdict form was a "series of questions" that jurors should answer: "And just, for example, the first question is: We, the jury, unanimously find the defendant, Jarrod Dunn, is not/is, fill in the blank, guilty of the offense charged in Count 1. And then there [are] some directions here where you answer *one or more questions about the quantity of drugs as they relate to Count 1*." (emphasis added). No plain error occurred.

## B.

Jarrod also argues that his sentence violates the Sixth Amendment because it rests on a drug amount not admitted by the defendant or found by a jury. Because the jury found that his crime did not involve more than 50 grams of cocaine base, he argues, the court should not have attributed a higher drug weight to him and should have applied a base offense level of 30. The factual premise of his claim is mistaken. The presentence report credited him with 4,941.9 kilograms of marijuana equivalent, resulting in a base offense level of 34 under the 2004 guidelines. It also recommended a 2-level adjustment for obstruction of justice, resulting in a total offense level of 36. Based on an

offense level of 36 and a criminal history category of I, the report calculated a guidelines range of 188 to 235 months. In his sentencing memorandum, Jarrod argued that the court should apply a base offense level of 30 because the jury held him responsible for only 5 grams or more of cocaine base and rejected the larger quantity charged in the indictment. He also objected to the obstruction-of-justice enhancement. A total offense level of 30, he argued, would result in a guideline range of 97 to 121 months.

The court ultimately sentenced Jarrod to 145 months. In its statement of reasons, the court explained that it attributed 41.7 grams of cocaine base to Jarrod, thereby changing the base offense level from 34 to 30—just as Jarrod had requested. The court continued to apply the 2-level adjustment for obstruction of justice—a decision that Jarrod does not appeal—resulting in a total offense level of 32 and a guidelines range of 121 to 151 months. As the court did exactly what Jarrod now argues it should have done, we must affirm his sentence.

V.

For these reasons, we affirm the convictions and sentences of both defendants.