RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HERSIE R. WESSON,

          *Petitioner-Appellant*,

*v.*

TIM SHOOP, Warden,

          *Respondent-Appellee*.

No. 20-3613

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:14-cv-02688—Dan A. Polster, District Judge.

Argued: October 5, 2021

Decided and Filed: November 9, 2021

Before: SUTTON, Chief Judge; STRANCH and NALBANDIAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Joseph E. Wilhelm, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Joseph E. Wilhelm, Vicki R. A. Werneke, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, Melissa Jackson, Michelle Umaña, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

### OPINION

_____

SUTTON, Chief Judge. Hersie Wesson appeals the district court's judgment denying his petition for a writ of habeas corpus. At issue is whether the state courts properly admitted his

confession, which occurred when he allegedly was intoxicated, under the Fifth and Fourteenth Amendments. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The district court rejected the claim. Because the state courts did not unreasonably apply the law or facts, we affirm.

I.

The State of Ohio charged Wesson with murdering 81-year-old Emil Varhola and attacking (and nearly killing) his 77-year-old wife, Mary, after they invited him into their home on February 25, 2008. In 2009, a three-judge panel convicted Wesson of several charges, including two counts of aggravated murder, and imposed the death penalty. During the proceedings, Wesson sought to suppress his confession to police due to his alleged intoxication and other factors when they questioned him. The state trial court denied Wesson's motion to suppress. On direct appeal, the Ohio Supreme Court vacated one of Wesson's aggravated murder convictions but affirmed his remaining convictions and the death sentence. *State v. Wesson*, 999 N.E.2d 557, 584 (Ohio 2013). In the course of doing so, the Court rejected Wesson's claim that his alleged intoxication vitiated his *Miranda* waiver. *Id.* at 568–70.

Wesson sought relief under 28 U.S.C. § 2254, alleging, among other things, that (1) he is intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), and (2) the government violated his right against self-incrimination when it introduced his post-*Miranda* statement. As to the first claim, the district court found that Wesson made a credible claim of intellectual disability, and, on a joint motion of the parties, dismissed the intellectual disability claim and a related ineffective-assistance-of-counsel claim without prejudice to allow the state court to conduct an evidentiary hearing. *Wesson v. Jenkins*, No. 5:14 CV 2688 (N.D. Ohio May 12, 2020). As to the second claim, the district court denied relief and granted a certificate of appealability with respect to it. *Wesson v. Jenkins*, No. 5:14 CV 2688, 2020 WL 1066531, at *15–22, *67 (N.D. Ohio Mar. 5, 2020).

II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, called AEDPA for short, federal courts may override state criminal convictions only if the state court unreasonably applied clearly established Supreme Court precedent or the conviction turned on unreasonable

findings of fact. 28 U.S.C. § 2254(d). For legal conclusions, the state court decision must be objectively unreasonable, not just wrong. *White v. Woodall*, 572 U.S. 415, 419 (2014). For fact findings, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). So long as the state court's fact finding is supportable, we will respect it. *Id.*

The Fifth Amendment says that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A suspect may waive this protection, including in a pretrial interrogation, if, in light of the totality of the circumstances, he does so "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. A suspect waives his rights knowingly and intelligently if he "understand[s] the basic privilege guaranteed by the Fifth Amendment," but he need not comprehend "every possible consequence of a waiver." *Colorado v. Spring*, 479 U.S. 564, 574–75 (1987). A waiver is voluntary where the suspect's decision to talk is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A *Miranda* waiver is not voluntary if it is the product of police coercion. *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016). The government has the burden of proving that a defendant validly waived his *Miranda* rights. *See Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010).

In requiring a waiver to be voluntary, the Fifth Amendment does not concern itself "with moral and psychological pressures to confess emanating from sources other than official coercion," say a fervid conscience, for the "privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (quotation omitted). A prerequisite to finding that a defendant involuntarily waived his *Miranda* rights is some element of official coercion. A waiver is coerced if "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). The coercion inquiry looks to several potential considerations: the age, education, and other characteristics of the suspect; whether the

suspect was advised of his *Miranda* rights; the length of the questioning; and the use of physical punishment or the deprivation of food, sleep, or other creature comforts. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (consent to search).

Wesson's challenge to his *Miranda* waiver does not clear AEDPA's high bar. Start with the general circumstances of the interview. An officer read Wesson's *Miranda* warning to him; he affirmed that he understood each aspect of it. The interrogation was not overly long; it lasted just 45 minutes. And the circumstances of the interrogation were not unusual; Wesson does not claim that the police unfairly denied him access to medical attention, food, a bathroom, or anything else he needed. That the officers placed Wesson in handcuffs attached to a desk, and one officer sat close to him, did not create a coercive environment either. Handcuffs and some physical proximity with police officers are run-of-the-mine features of any custodial interrogation. That one officer said another officer "can get really mean" does not change this conclusion. R.13-6 at 93. A single vague statement about an officer's temper, even if true, does not suggest coercion of "such . . . gravity" that Wesson "would have lost the will to resist" the officers' interrogation during the interview. *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002).

Wesson's key claim—that he was too inebriated to waive his Fifth Amendment rights knowingly or voluntarily—runs into two problems. The first is that the state court's fact findings do not support it. The Ohio Supreme Court upheld the admission of this statement based in part on the ground that "the trial court finding that Wesson validly waived his *Miranda* rights is supported by competent and credible evidence, consisting of the testimony of the four police officers [that he did not appear intoxicated] and the audio recording of Wesson's statement." *Wesson*, 999 N.E.2d at 570. Wesson claims that the state court made an unreasonable determination of the facts when it assessed his state of inebriation, pointing to the "strained and raspy" quality of his voice in the interview recording, his testimony that he fell out of his chair, and a "fantastical story" he told about an ongoing sexual relationship with his octogenarian victims as evidence that he was so intoxicated that it would have been obvious to his custodians. Petitioner's Br. 22–27. He also points to the fact that two officers later testified at trial that they smelled alcohol on Wesson on the night of his arrest.

But there is a state-court fact finding to counter his every claim. In its suppression ruling, the state trial court found that the recording did not contain any evidence of Wesson sounding intoxicated or falling out of his chair, and it credited the unequivocal testimony of four police officers that Wesson did not behave in an impaired way during the interrogation. The court found that "the detectives' testimony was more credible than the Defendant's" testimony based on the fact that Wesson's statements were "inconsistent." R.12-4 at 78. In a federal habeas proceeding, state-court credibility determinations are accorded considerable deference given "the respect due state courts in our federal system," and we presume them "correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003); *see Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (explaining that federal habeas courts do not second-guess credibility determinations by state courts where we have not also had an opportunity to observe the testimony). The Ohio Supreme Court ratified these findings. It also held that "Wesson's prior criminal record shows familiarity with the criminal process, and he himself recited the *Miranda* warnings at the suppression hearing." *Wesson*, 999 N.E.2d at 570. These facts strongly suggest that Wesson's taped waiver, which was available to us and which by itself does not contain any glaring red flags, was knowing and intelligent. On this record, particularly in view of the trial court's ringside credibility determination, we cannot say that this conclusion "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The second problem with this argument is a legal one—that the state courts reasonably determined that no police coercion occurred. *Wesson*, 999 N.E.2d at 570. The Fifth Amendment, as noted, focuses on *police* coercion, not self-created explanations for confessions, and that is the case, we have said, even for defendants who were severely intoxicated. *United States v. Dunn*, 269 F. App'x 567, 572 (6th Cir. 2008). In one case, we held that a suspect with a blood-alcohol content of 0.25 had voluntarily confessed given the absence of evidence of police coercion. *Marcum v. Knight*, 922 F.2d 841, 1991 WL 1106, at *3 (6th Cir. 1991) (unpublished table decision). The Tenth Circuit reached the same outcome with a defendant who had a blood-alcohol content of 0.268. *United States v. Muniz*, 1 F.3d 1018, 1021 (10th Cir. 1993). Wesson's expert estimated that his blood-alcohol content was likely 0.17 and could have been as high as 0.24. Even then, however, he admitted on cross-examination that the estimate turned on

Wesson's account of what he had to drink the night before he was arrested, and the prosecution's expert testified that it was not possible to make an estimate without knowing the rate at which Wesson's body processed alcohol. All of this explains why the state court did not credit this testimony. Still, even if Wesson was as intoxicated as his expert claims, any questioning would not trespass on clearly established law without some element of police coercion. That evidence simply does not exist. The Ohio Supreme Court thus did not cross any lines, clearly established or otherwise, in applying the governing law.

Switching gears, Wesson claims that he attempted to withdraw his *Miranda* waiver when, during his interrogation, he told police officers "I ain't got nothin' to say to y'all." R.36 at 51–52. But a request to end an interrogation after a *Miranda* waiver must be unambiguous and unequivocal. *Berghuis*, 560 U.S. at 381; *see Davis v. United States*, 512 U.S. 452, 461–62 (1994). Wesson's statement was neither. As we have said before in handling a *Miranda*-waiver-revocation claim, "context matters." *Bird v. Brigano*, 295 F. App'x 36, 38 (6th Cir. 2008). When viewed in the light shed by his immediately preceding statements, Wesson's statement that he "ain't got nothin' to say to y'all" more accurately conveys an expression of frustration at his plight, a murder suspect faced with an eyewitness victim and a murder weapon connecting him to the deed, than an effort to end the interview. Confirming the point, we have rejected similar claims with equivocal requests to end an interrogation. *United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000) (holding defendant's "refusal to answer a question about stolen firearms" was not an unequivocal invocation where he said at the beginning of the interview that "he was willing to answer only specific questions"); *cf. Franklin v. Bradshaw*, 545 F.3d 409, 415 (6th Cir. 2008) (finding no unreasonable application of law in state court holding defendant's single statement that he did not want to tell his side of the story was not an unequivocal or unambiguous invocation of his rights in light of his answers to other police questions).

We affirm.