NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0045n.06

Case No. 21-1589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 25, 2022
DEBORAH S. HUNT, Clerk

KENNETH DEWAYNE HILL, )
)
    Petitioner-Appellant, )
)
v. )
)
)
THOMAS WINN, Warden, )
)
    Respondent-Appellee. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SUTTON, Chief Judge; GUY and DONALD, Circuit Judges.

SUTTON, Chief Judge. Kenneth Hill filed a federal habeas petition, in which he challenged four Michigan convictions. He argues that the use of his confession at trial violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court denied his petition, and we affirm.

In 2014, Hill drove three other men to a convenience store in Clinton Township, Michigan. *People v. Hill*, No. 2014002440, 2015 WL 4988671, at \*1 (Mich. Cir. Ct. Feb. 25, 2015). Hill waited outside. The others went into the store, two carrying firearms. After entering, one of the men shot the store owner, and another emptied the cash register. They fled in Hill's car. A witness reported a suspected robbery. The store owner died before any responding officers arrived.

The police identified Hill and his companions as suspects and arrested them. Officers advised Hill of his *Miranda* rights, and he signed a written waiver. As Hill debated whether to

call an attorney, the detectives suggested it would be in Hill's best interest to cooperate. They told him that calling a lawyer would force them to end the interview. They suggested they would then speak to Hill's companions, who might come clean first. If that happened, one detective told Hill, they "may not come back and talk to" him. R.10 at 7.

Hill asked for a lawyer, and the police ceased questioning. After 20 minutes, however, he informed them that he wanted to give a statement. At that point, he told the full story and confessed to his involvement.

Hill moved to suppress his statements. The trial court denied the motion. The jury convicted him of first-degree felony murder, Mich. Comp. Laws § 750.316; armed robbery, *id.* § 750.529; conspiracy to commit armed robbery, *id.* §§ 750.529, 750.157; and possession of a firearm in the commission of a felony, *id.* § 750.227b.

Hill appealed, arguing that the police coerced his confession. The Michigan Court of Appeals affirmed. "[A]fter considering the totality of the circumstances," it found "no indication" that Hill did not "exercis[e] his free will." *People v. Hill*, No. 329166, 2017 WL 535546, at *5 (Mich. Ct. App. Feb. 9, 2017) (per curiam). "On the contrary," the court continued, "the fact that Hill initially invoked his right to counsel and ended the interrogation . . . strongly suggests that Hill *was* exercising his own free will and *was* aware of his rights." *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Hill*, 900 N.W.2d 644, 644 (Mich. 2017).

Hill sought habeas relief in federal court, raising the *Miranda* claim. The district court denied his application. Applying the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA for short, it concluded that the Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

Hill appealed.

AEDPA sets the stage. It limits the federal courts' authority to invalidate state-court convictions. A federal court may not grant relief unless the state court decision was contrary to or an unreasonable application of U.S. Supreme Court precedent or relied on an unreasonable factual conclusion. 28 U.S.C. § 2254(d). A legal error must be "so obviously wrong" that it "lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam). AEDPA also requires deference to state-court factfinding absent contrary clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Under the Fifth Amendment to the Federal Constitution, made applicable to the States by the Fourteenth Amendment, officers must advise arrestees of their rights to remain silent and to retain a lawyer. *Miranda*, 384 U.S. at 444. Otherwise, the government may not introduce any later statements at trial. *Id.* While a defendant may waive his *Miranda* rights, he must do so knowingly and voluntarily. *Id.* at 475. That requires the defendant to grasp the nature of his rights, understand the consequences of forgoing them, and make a "free and deliberate choice" to waive them. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In determining whether a defendant voluntarily abandoned his *Miranda* rights, we look to all material factors, including his age, education level, and other personal characteristics, along with the nature of the interrogation. *Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021).

The Michigan Court of Appeals reasonably applied these principles. Reviewing a video of the interrogation, the court observed that Hill was "able to readily communicate with the detectives" and that police did not "unnecessar[ily] delay" his interrogation. *Hill*, 2017 WL 535546, at *5. The record, the state appellate court found, did not indicate that Hill was "injured, intoxicated, drugged, in ill health, or in need of food, sleep, or medical attention" or that his "age, intelligence, education level, or lack of prior experience with the police" interfered with his free

3

will. *Id.* The court added that officers did not entice Hill to confess by promising leniency. To the contrary, the detectives explained they "were not offering any 'deals' or 'promises.'" *Id.* While detectives suggested they would not interview Hill after he called an attorney, the court noted that the officers "repeatedly echoed" that Hill had a right to retain one. *Id.* That analysis comports with U.S. Supreme Court precedent.

Hill's contentions that his confession was involuntary fail to show that the state court unreasonably applied federal law. He argues that the officers coerced him to speak by forcing him to choose between giving a statement and calling a lawyer. At the outset of questioning, after advising Hill of his rights, one detective informed Hill that "right now" was when the detective "want[ed] [him] to be truthful." *Id.* at *3. "And with you asking for a lawyer," the detective continued, "I'm just telling you that we are going to talk to everybody. And this is your only opportunity to talk to us." *Id.* at *4. Hill insists that, by creating this dilemma, the officers interfered with his ability to make a free and informed decision.

The Michigan Court of Appeals reasonably rejected this claim. It acknowledged that "the detectives made several statements indicating that Hill would not be permitted to speak with them after speaking with an attorney." *Id.* at *5. Even so, it found his waiver voluntary. It emphasized that the detectives "repeatedly" advised Hill of his rights and that he "acknowledged that he was familiar with those rights." *Id.* This conclusion does not conflict with Supreme Court precedent, and indeed Hill has cited no such case.

Hill's fear that the detectives would interview his companions does not change things. True, his desire to tell his side of the story may have influenced his decision to cooperate. But nothing required the detectives to continue questioning him or refrain from speaking to the other men. The detectives' warning that they might do something they had legal authority to do does

not transform Hill's waiver into an involuntary one. *Cf. United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998) (noting that a threat to obtain a search warrant does not taint consent to search so long as the threat is not baseless or pretextual). Any implication that Hill's coconspirators might confess and preempt his cooperation merely predicted a potential legitimate consequence. *Id.*

Hill separately claims that the detectives told him that he could not speak to a lawyer if they interviewed the other suspects first. The record proves otherwise. As the state court found, the detectives "repeatedly" told Hill he could obtain a lawyer. *Hill*, 2017 WL 535546, at *5. They never said that, if he did not call a lawyer at the outset, he never would be able to call one later.

Hill adds that the police coerced his confession through promises of leniency. But the Michigan Court of Appeals found that the detectives "expressly informed" him that they "were not offering any 'deals' or 'promises.'" *Id.* That is true, the record demonstrates. Before Hill confessed, one detective confirmed, "I haven't promised you anything, right?" *Id.* at *4. Hill agreed. *Id.* Even a promise of leniency would invalidate Hill's *Miranda* waiver only if it were coercive. *United States v. Binford*, 818 F.3d 261, 271–73 (6th Cir. 2016). The detectives' suggestions that it might behoove Hill to cooperate fall short of that bar.

Hill, last of all, claims that the officers coerced his waiver by misrepresenting the nature of felony-murder liability. But he did not raise this argument in his habeas petition, and accordingly he has forfeited it on appeal. *Babick v. Berghuis*, 620 F.3d 571, 580 (6th Cir. 2010).

We affirm.

5